**The CLAYTON OIL COMPANY, a Partnership, Appellant (Plaintiff below),**

**v.**

**H. M. SHIDLER, Appellee (Defendant below).**

**No. 3815.**

Supreme Court of Wyoming.

Aug. 13, 1970.

Houston G. Williams, of Wehrli & Williams, Casper, for appellant.

No appearance for appellee on appeal.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Action was brought by The Clayton Oil Company, plaintiff, against H. M. Shidler, defendant, for damages stemming from a failure of title in connection with an agreement pertaining to operations under an oil and gas lease.

The agreement in dispute was an operating agreement entered into by Shidler as owner of a state oil and gas lease and Clayton as operator of the lease. The contract recited that Shidler was the record title owner of State of Wyoming Oil and Gas Lease No. 0–24427 covering the E½ of a certain Section 36 in Natrona County.

Under the contract, Shidler transferred, assigned, conveyed and set over to Clayton all rights to operate, produce, take and remove the oil, gas and hydrocarbons in and under the NE¼ of Section 36, down to the top of the Beaver Chalk formation.

After the operating agreement had been entered into, Clayton discovered Shidler had assigned a 15% working interest in the lease to Karl L. Krusmark several years before the operating agreement was executed. The oil purchaser for oil being produced by Clayton recognized the interest of Krusmark; and thereupon Clayton sued Shidler for damages.

The case was tried to the court without a jury. The trial court decided the question of whether Clayton is entitled to damages depends on the interpretation to be given to paragraph 4 of the operating agreement. Finding, under its interpretation of paragraph 4, that Clayton could not claim damages for failure of Shidler's title, the district court entered judgment for the defendant without making a determination of the amount of plaintiff's damages. The plaintiff, Clayton, has appealed.

We disagree with the view which the trial court has taken of paragraph 4 and are of the opinion that plaintiff has shown itself entitled to damages on account of a failure of Shidler's title. We arrive at that opinion from a consideration of the contract as a whole and not from any single word, phrase or provision therein.

Let us begin nevertheless with a consideration of paragraph 4, which reads:

"4. First Party [Shidler] represents without warranties that he is the owner of the above described oil and gas lease subject to recorded royalties as follows:

Landowner's royalty payable to State of Wyoming:  12½ per cent.
Overriding royalty:  5 per cent.

First Party [Shidler] further represents that he knows of no other burdens of record upon the same, whether royalties or oil payments."

Counsel for appellant seems to argue that the preliminary recital in the contract to the effect that Shidler is the record title owner of the lease, and Shidler's express representations in paragraph 4 that he is owner of the lease and that he knows of no other burdens of record, constituted a covenant of seisin and good right to convey.

Counsel then points out that covenants of seisin and good right to convey are personal between grantor and grantee, while the covenant of general warranty is a separate and distinct covenant and is a covenant which runs with the land. Childress v. Siler, Tex.Civ.App., 272 S.W.2d 417,

420, is cited as authority for these principles.

Appellant takes the position that the words "without warranties," in paragraph 4, mean nothing more than without general warranty; that the covenant of seisin and good right to convey remains despite the words "without warranties"; and that the covenant of seisin was breached immediately upon execution of the assignment to Clayton because Shidler did not own the entire lease.

### Contract Construction

■■  Without indulging in the niceties of the law pertaining to covenants, we prefer to approach the construction of the operating agreement in this case as we would approach the construction of any other contract. In doing so, we will follow generally recognized principles in contract construction, two of which are these:

1.  The fundamental canon of construction applicable to contracts generally is the ascertainment of the intention of the parties. Universal Sales Corporation v. California Press Mfg. Co., 20 Cal.2d 751, 128 P.2d 665, 671.

2.  A contract must be construed as a whole, and every part must be read in light of other parts. Goodman v. Newzona Inv. Co., 101 Ariz. 470, 421 P.2d 318, 321.

■  When we examine the operating agreement between Shidler and Clayton, we are impressed with several things which must be considered in determining what was meant by the parties when they said Shidler represents without warranties that he is the owner of the lease in question.

The agreement started with a recital to this effect: "WHEREAS First Party [Shidler] is the record title owner" of the state lease. Paragraph 1 of the agreement recites that Shidler does hereby transfer, assign, convey and set over to Clayton "all rights" to operate, produce and remove oil, gas and other hydrocarbons from the NE¼ of Section 36. No exception or re-

striction in this assignment is indicated. Again, paragraph 2 recites that Shidler hereby transfers and sets over to Clayton "all production and the proceeds of production" from an existing well on the NE¼ of Section 36. No exception or restriction is expressed in connection with this transfer.

As far as paragraph 4 is concerned, it states that Shidler represents without warranties that he is owner of the lease, subject to the state's royalty of 12½ per cent and an overriding royalty of 5 per cent. It expressly states that Shidler further represents that he knows of no other burdens of record.

When all of these provisions are considered together, what must we conclude the parties meant by saying Shidler "represents without warranties" that he is owner of the lease? We cannot ignore the several representations by Shidler that he was owner and that he purported to convey *all* rights in the minerals covered by the operating agreement, subject only to 17½ per cent royalty.

And yet, it is possible the state could challenge whether the lease had been kept alive by production or delay rentals; it was possible that liens could be asserted by third parties in connection with past operations; and it was possible that the United States or some other party could challenge the state's ownership of the land.

In effect, what Shidler said was to the best of his knowledge and belief he was owner, and the lease was good. There was both an express and an implied warranty against anything he himself may have done to diminish the title beyond the royalty obligations of 17½ per cent. The agreement was "without warranties" as to claims not stemming from the grantor, Shidler.

Inasmuch as Shidler himself gave the assignment to Krusmark and yet represented that he owned all of the lease and knew of no other burdens, he would have to be held accountable to Clayton for fraud if he were not held liable on a warranty that to the best of his knowledge and belief

he owned the lease subject only to 17½ per cent royalty payments.

Judgment should be for Clayton on the issue of liability. The amount of damages is yet to be determined.

Reversed and remanded for trial on the issue of damages.