Charles G. **SHELLHART**, Appellant
(Plaintiff below),

v.

Francis A. **AXFORD** and Beverly M. Axford,
Appellees (Defendants below).

No. 3883.

Supreme Court of Wyoming.

June 17, 1971.

Fred W. Phifer, Wheatland, for appellant.

William R. Jones and William Vines, of Jones, Jones, Vines & Hunkins, Wheatland, for appellees.

Before McINTYRE, C. J., and PARKER, McEWAN and GRAY, JJ.

Chief Justice McINTYRE delivered the opinion of the Court.

Charles G. Shellhart brought an action in the district court to compel specific performance by Francis A. Axford and Beverly M. Axford in connection with an option in a real estate lease agreement. The option provision, as expressed in the agreement, states:

"This extension shall also incorporate an option on the part of the LESSEE to purchase the above described property at any time during the term of this lease or its extension for the sum of $12,000.00. This option may be exercised at any time prior to December 1, 1969 by giving the LESSORS at least 30 days notice in writing of LESSEE'S intention to so exercise said option."

As we view the record, plaintiff failed to prove that he properly exercised the option, if he had one. We need not, therefore, pass upon the validity of the option itself.

According to the agreement of the parties, it was contemplated the option could be exercised at any time prior to December 1, 1969 by giving the lessors at least 30 days notice in writing of lessee's intention to exercise the option. The allegation of plaintiff's complaint with respect to his exercise of the option was that heretofore, on November 6, 1968, December 17, 1968, and June 24, 1969, plaintiff had "attempted" to give the notice in writing of his intent to exercise the option, by mailing notices to Francis A. Axford.

██ Of course, an attempt to give notice is not the same as giving notice, and there was no provision in the lease agreement for an exercise of the option by an attempted notice. Moreover, as we shall see, even the attempts relied upon fell short of being an exercise of the option.

It appears from the evidence that Shellhart first wrote to Axford, who was in military service, and that something was said in the letter about the option. We have no way of knowing exactly what was said at that time because neither the letter nor a copy of it is in evidence. It is clear, however, that plaintiff does not rely on that letter as an exercise of option.

After several months Axford replied to Shellhart's letter. The reply was dated October 7, 1968. It indicated Shellhart had expressed a wish to purchase at a later date. The writer then explained, his understanding of the option clause was that Shellhart had the first right of refusal, in the event Axford decided to sell. There was nothing in Axford's reply which would indicate Shellhart had exercised or attempted to exercise the option.

Attached to an affidavit of plaintiff's attorney are copies of two letters which the attorney had mailed to Axford while he was still in military service. It was not established whether they had been received. Without attempting to say whether a notice from the lessee's attorney would have been a sufficient notice of lessee's intention to exercise his option, we will look at the letters themselves.

First, however, it should be mentioned that these letters were not in evidence. The trial judge assumed the parties intended them to be considered. Even if the letters are thought of as a part of the evidence, however, they do not show an actual exercise of option.

██ The plaintiff's complaint alleged an attempt to give notice on November 6, 1968. The letter from plaintiff's attorney

so dated referred to the option provision and stated: "This letter shall constitute that notice, however, the actual exercise of the option will not occur until sometime before December 1, 1969."

The words quoted make it clear the option was not currently exercised because it was stated the "actual exercise of the option will not occur until sometime before December 1, 1969." However, there is no evidence of an exercise at a later date. If there was an option at all, it clearly contemplated a cash purchase price of $12,000 —not a payment deferred for approximately a year. The letter on the other hand made it clear lessee was continuing under his lease and not at that time exercising an option to purchase.

■ It goes without saying that mutuality is required for any contract. In this instance Shellhart did not pay, or bind himself to make immediate payment of, the purchase price, as far as statements made by his attorney on November 6, 1968 are concerned. This was made clear by a portion of the letter which stated:

"If you are going to be in the States sometime during the next year, Chuck wants us to get together and escrow the deal in the bank so that December 1, 1969 it can be executed and the balance then owing can be remitted to you at that time. At the time we put the deal in escrow Chuck is willing to give you a down payment."

It is apparent from the foregoing that instead of a cash purchase price payment of $12,000 when lessee's option was exercised, as contemplated by the lease agreement, the attorney was making a counter offer for his client and attempting to set up a different deal, with a down payment and the rest payable later. This contemplated Shellhart would become bound if and when the parties got together and consummated the new deal.

There is some indication in the record that a copy of the November 6, 1968 letter was remailed to Axford on December 17, 1968. There is no evidence of a different letter under that date.

On June 24, 1969, according to the affidavit of plaintiff's attorney, he mailed another letter to Axford for Shellhart. It was worded differently, but the substance was the same as the letter dated November 6, 1968.

■ There is some suggestion that initiation of the suit here involved constituted an exercise of the option by lessee. Although the suit was filed August 20, 1969 and a default decree was thereafter entered, the parties subsequently stipulated that the decree would be set aside; and the appearance of the defendants was entered as of February 10, 1970. We are shown no reason or authority for believing anything done prior to that date constituted an exercise of the option in accordance with the agreement of the parties.

■ The agreement we are concerned with was entered into December 23, 1965. It extended the term of an existing farm lease for three years—from December 1, 1966 to December 1, 1969. As will be noted from the option provision set forth above, the optionee was granted an option to purchase at any time during the term of the lease or its extension, for $12,000. It was specified that the option could be exercised at any time prior to December 1, 1969 "by giving the lessors at least 30 days notice in writing of lessee's intention to exercise said option."

As the appellant seeks to interpret the latter provision, he could have given written notice to lessors on December 24, 1965 (the day after the agreement was made) that lessee intended to purchase the property on November 30, 1969. Thus, for annual rental payments of $800 lessee could have postponed payment of the purchase price for nearly four years. Interest and financing charges could have been less desirable than rental payments. For example, interest on $12,000 at ten percent would amount to $1,200 per year.

■ Obviously, the parties did not intend such a result; and the fundamental canon of construction applicable to contracts generally is the ascertainment of the intention of the parties. Clayton Oil Company v. Shidler, Wyo., 473 P.2d 593, 594.

■ In this instance the parties merely said the option may be exercised by giving the lessors at least 30 days notice in writing of lessee's intention to exercise said option. Although the matter was not expressly stated, it goes without saying an essential step in the exercise of a purchase option is payment of the purchase price. Whether expressed in so many words or not, it is to be impliedly understood that an option such as the one considered cannot be exercised without the requisite notice and without payment of the purchase price.

We therefore construe the contract to mean the option could be exercised at any time prior to December 1, 1969 by giving lessors at least 30 days notice in writing of lessee's intention to exercise the option *and* by paying the purchase price. No evidence is reflected in the record which would tend to show that the $12,000 purchase price was paid to lessors prior to December 1, 1969.

■ We have often said a contract must be construed as a whole, and every part must be read in light of other parts.[1] The optionee should not overlook that the option granted to him was an option "to purchase" real estate "for the sum of $12,-000.00." When these terms are given meaning and effect, it becomes clear the intent of the parties was for payment of the purchase price to be a necessary part of the "exercise" of the option.

Our conclusion is: If the purchase price of $12,000 was not paid or sufficiently tendered prior to December 1, 1969, which it was not, then the option granted to lessee was not "exercised" prior to December 1, 1969. The judgment of the district court must therefore be affirmed.

Affirmed.

PARKER, J., concurs in the result.

McEWAN, Justice (concurring).

I do not know what else the appellant could have done to "exercise" the option. When attempts at communication with appellees-optionors proved unsuccessful the appellant-optionee filed suit, and, upon entry of default judgment, paid $12,000 to the Clerk of the District Court on or before November 7, 1969. The appellees, on or before that date, acknowledged receipt of a copy of the amended default decree. Therefore, the appellees knew before the expiration of the time that the appellant not only intended to exercise the option, but did so by filing suit. The $12,000 was paid for the benefit of the appellees before the expiration date of the alleged option. The appellant timely exercised the alleged option, the appellees were so notified and the $12,000 was paid. Thus, I believe the exercise of the alleged option was fully and timely performed by the appellant.

The trial court also found that the option, on its face, appeared to be vague and uncertain. I agree with this finding, and therefore concur in the result.

1. Clayton Oil Company v. Shidler, Wyo., 473 P.2d 593, 594; and Witzel v. Witzel, Wyo., 386 P.2d 103, 107. See also Goodman v. Newzona Investment Co., 101 Ariz. 470, 421 P.2d 318, 321.