H. M. SHIDLER, Appellant (Defendant below),

v.

The CLAYTON OIL COMPANY, a partnership, Appellee (Plaintiff below).

The CLAYTON OIL COMPANY, a partnership, Appellant (Plaintiff below),

v.

H. M. SHIDLER, Appellee (Defendant below).

Nos. 4118, 4119.

Supreme Court of Wyoming.

Nov. 13, 1972.

Donald E. Chapin, Casper, for Shidler.

Houston G. Williams, of Wehrli & Williams, Casper, for Clayton Oil Co.

Before McINTYRE, C. J., and PARKER, McEWAN and GUTHRIE, JJ.

McINTYRE, Chief Justice.

The Clayton Oil Company, plaintiff, sued H. M. Shidler, defendant, for damages stemming from a failure of title in connection with an agreement pertaining to operations under an oil and gas lease. The district court found for the defendant and denied damages to Clayton.

In Clayton Oil Company v. Shidler, Wyo., 473 P.2d 593, we reversed the action of the district court and remanded the case for trial on the issue of damages. Findings have now been made as to the amount of Clayton's damages and judgment was entered pursuant thereto. Both parties have appealed from the judgment pertaining to damages.

In a letter entitled "Decision Letter," the trial judge stated this conclusion:

"* * * I believe the judgment for plaintiff should consist of the $2,210.28 production withheld to May 1, 1969, on account of the 15%, together with the estimated production from that 15% thereafter for the economic life of the well, a figure of some $2,900.00, according to plaintiff's testimony, but with that figure reduced to a present value. * * *"

After the judge's decision letter was received by the attorneys, counsel for Clayton wrote the judge suggesting the figure for future loss on account of the 15% working interest held by Karl L. Krusmark should be $6,565.48 instead of "some $2,900.00" as the judge had stated. All figures were taken from plaintiff's Exhibit 4 and counsel represented to the judge as follows:

"The $2,900.00 figure is actually $2,965.48, which appears on page 1 of this exhibit as the future *net* income loss if Clayton could recover drilling and operating costs attributable to the 15%. However, your decision is based upon lost production figures, which means gross production figures, and the figures which I have used represent such amounts."

The pertinent portion of Exhibit 4, as it pertains to future production and the 15% working interest, reflects the following:

| "Future Net Income From Above Well From 5-1-69 To the 15% Working Interest Lost | | |
| --- | --- | --- |
| Gross Ultimate Primary Recovery | 28,300.00 | Bbls. |
| Cumulative Recovery (5-1-69) | 7,405.00 | |
| Gross Reserves | 20,895.00 | Bbls. |
| 15% Working Interest Portion of the Gross Reserves (11.25%) | 2,350.69 | Bbls. |
| 15% Working Interest Gross Value of Oil at $2.793 per Barrel | $ 6,565.48 | |
| Lifting Cost to 15% Working Interest | 3,600.00 | |
| Net Future Loss to Clayton of Net Income to the 15% Working Interest | $ 2,965.48" | |

Apparently the judge was persuaded by the argument of counsel for Clayton, and when judgment was finally entered, the court allowed plaintiff $2,210.28, representing gross production withheld to May 1, 1969 on the 15% interest. It then allowed $6,565.48, representing future gross production attributable to said 15% interest "reduced to its present value of $5,511.66." Interest was allowed on both items. The court also ordered that in the event plaintiff recovers from the owner of the 15% his proportionate share of the costs and expenses of drilling, equipping and operating the well, the same shall inure to the benefit of Shidler.

### The Shidler Appeal

Shidler's first assignment of error is that the judge considered only gross production without reducing the amount by the proportionate share of costs of production chargeable to Krusmark. A review of the judge's original decision letter together with Exhibit 4—the principal evidence relied on by plaintiff—discloses that the judge was right in the first place and wrong when he changed to the theory of counsel for Clayton.

The theory advanced by counsel for Clayton treats the Krusmark interest as if it is an overriding royalty of 15% rather than a 15% working interest. There can be no doubt that Clayton as operator of the lease can and should withhold from any payments due Krusmark 15% of all drilling and lifting costs.

The Clayton argument seems to be that Shidler caused all the trouble about the Krusmark interest and therefore Shidler should pay Clayton damages equal to 15% of the *gross production,* leaving it up to Shidler to recover from Krusmark what Krusmark owes on drilling and lifting costs.

■ This argument entirely overlooks the obligation of Clayton to mitigate its damages. As stated by us in Asbell Bros., Inc. v. Nash-Davis Machinery Company, Wyo., 382 P.2d 57, 59, it is well established that one who is injured by the wrongful act of another must exercise reasonable care and diligence to avoid loss or to minimize the resulting damage.[1]

■ That rule is especially applicable in this case because Clayton is the operator of the lease involved.[2] Moreover, as indicated in our former decision, at 473 P.2d 593, Clayton knew of the interest of Krusmark when it sold oil. Thus, Clayton has been and is in a far better position than Shidler to collect drilling and lifting costs from Krusmark. As we see it, all Clayton has to do is to withhold such costs from Krusmark or cause the costs to be withheld by the oil purchaser. Also, Clayton knows what the drilling and lifting costs are and Shidler has no way of knowing.

As indicated in our former opinion, at 473 P.2d 593, Shidler assigned to Clayton the right to operate, produce, take and remove oil and gas in a certain quarter-section of land. If Clayton knew of Krusmark's interest when Clayton drilled, then Clayton necessarily drilled with the understanding that 15% of all drilling and lifting costs would be withheld from Krusmark's share of proceeds. And even if Clayton did not know of the Krusmark interest at the time of drilling, it did know of such interest prior to any settlement with Krusmark. Therefore, Clayton has been in a position at all times to see that Krusmark's share of drilling and lifting costs are withheld from proceeds payable to Krusmark.

A look at Exhibit 4 reveals that the judgment as entered is contrary to the testimony and intention of the expert who prepared such exhibit. With respect to damages in connection with future income, the exhibit, on page 2, clearly shows lifting costs to the 15% working interest at $3,600.00.

1. See also Sturgeon v. Phifer, Wyo., 390 P.2d 727, 730.

2. See Clayton Oil Company v. Shidler, Wyo., at 473 P.2d 593.

Also, on page 1, in a capitulation of losses, the exhibit lists the future net income loss to Clayton as $2,965.48. Then again, on page 3, the author of the exhibit undertook to show a possible loss in future or undrilled wells. In doing so, he used the figure of $2,965.48 as the future loss per well.

From these considerations, it becomes apparent there was no evidence of a future loss to Clayton in excess of $2,965.48.

■ The only other assignment of error actually argued by Shidler is that funds impounded by the oil purchaser are in the reach of Clayton but not Shidler; and that Clayton's judgment should be reduced by that amount. The judge's decision letter referred to $2,210.28 as the production withheld to the time of trial (May 1, 1969), on account of the 15%. Neither side has challenged this figure.

The testimony of plaintiff's expert witness concerning the impounded funds of $2,210.28 was that such funds are burdened with an obligation to Clayton of $3,404.04 as Krusmark's share of the capital investment made in the well through May 1, 1969. We see no reason therefore why Clayton is not in a position to cause the impounded funds of $2,210.28 to be released to it—especially since it is operator of the lease.

What we have said about Clayton having a duty to mitigate damages applies to impounded funds. Clayton is in a position to collect the $2,210.28 and Shidler is not. Under these circumstances, we are inclined to believe plaintiff should not have judgment against Shidler for the $2,210.28 and that portion of the judgment needs to be reexamined as we will indicate later.

### The Clayton Appeal

■ Counsel for Clayton urged upon the trial court that $5,000 should be allowed as additional damages resulting from being unable to develop the acreage by reason of not having all the working interest; and

$4,000 for time spent by Clayton's geologist and others. The trial judge said of these items, in his decision letter, that he was unable to see sufficient certainty and definiteness of relationship to warrant awarding any part of these items. We agree with the trial judge. Plaintiff's proof was not sufficient to prove these items as an element of damages.

■ Another item which the trial court did not allow was $3,404.04 claimed by Clayton as being 15% of the capital expenditures for drilling, completing, equipping and operating costs. It is, of course, clear from the operating agreement that Shidler is not obligated for drilling or production costs. Inasmuch as the Krusmark interest is a working interest, it follows that Clayton is not going to distribute anything to him until Clayton has recovered all of its drilling, completion and production costs.

Therefore, Clayton has not been damaged on account of the working interest held by Krusmark until Clayton has first recovered all of the drilling and lifting costs. The $3,404.04 item was properly disallowed.

■ The final item disallowed by the trial court was the sum of $15,527.28 claimed by Clayton as a loss in the future on three possible additional well locations on the property. The trial judge simply held any award based on additional wells is quite speculative and thus not warranted. We fully agree. The evidence indicates the likelihood of economical wells at other locations on the quarter-section here involved would definitely be problematical. We also find no evidence indicating the Oil and Gas Conservation Commission would permit 40-acre spacing in the area.

### Interest

■ In Chandler-Simpson, Inc. v. Gorrell, Wyo., 464 P.2d 849, 853, we said our court has long followed, in general, the rule that interest prior to judgment may

not be recovered on unliquidated demands if the amount cannot be ascertained by computation or reference to an established market value. We pointed out in the Chandler-Simpson case that various amounts had been claimed, indicating an unliquidated nature.

It is clear in the case now before us that several items of damages were claimed, with disputes as to what amounts could and could not be allowed. We hardly see how Clayton's claim for damages could be classed as anything but an unliquidated demand. If our holding in *Chandler-Simpson* was correct, and we have no reason to believe it was not, then all interest prior to judgment should be disallowed.

It would seem inequitable in any event to charge interest on the item of $2,965.48 because it is for future losses; and we fail to find anything in the record to show that the figure was reduced to its present value.

With respect to impounded funds, it has not been shown that the oil purchaser had a right to impound funds until Clayton had first recovered all of its drilling and lifting costs. If such funds were improperly impounded, it may be that the impounder should account for interest.

Our review leads us to the conclusion that the case must be remanded for further proceedings and revision of the judgment. First of all, the district court is instructed to determine whether the impounded funds of $2,210.28 will be released by the oil purchaser to Clayton. If there be any doubt, the purchaser must be joined as a party defendant to this suit; and if necessary, Krusmark may also be similarly joined. A determination should then be made with respect to rights in the impounded funds.

After the status and rights in the impounded funds are determined, the judgment must be revised to reflect such determination; the present award of $5,511.66 must be changed to $2,965.48; and the allowance of interest prior to judgment should be deleted.

Remanded for proceedings consistent with the views herein expressed.