**J. R. STONE COMPANY, INC.,
Plaintiff and Appellant,**

v.

**Raymond S. KEATE, Defendant
and Respondent.**

No. 14834.

Supreme Court of Utah.

March 3, 1978.

5. *Greaves v. State,* Utah, 528 P.2d 805 (1974); *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

Robert M. McDonald, of Jones, Waldo, Holbrook & McDonough, Salt Lake City, for plaintiff and appellant.

David Lloyd, Salt Lake City, for defendant and respondent.

CROCKETT, Justice:

The controversy here arises from a lease and option to purchase a business property granted by plaintiff Stone Co. to defendant Raymond S. Keate in which the latter operated Fiber Glass Products Inc.[1] The trial court found in accordance with plaintiff's contention that the defendant's attempt to exercise the option to purchase was abortive, but ruled against its contention that the option is void and unenforceable. Plaintiff appeals.

In January 1971, the defendant Keate contacted Attorney Gerald R. Turner to get help in his plan to raise money to build a new plant and obtain equipment and working capital for his air-filter manufacturing business, all of which would require in excess of $400,000. They decided to take advantage of a program of the Small Business Administration (herein, S. B. A.). Under it, a third party could own a business property, lease it to the defendant Keate to operate his business therein, and the S. B. A. would guarantee payment of the rent to the landlord. Such an arrangement would make it easier to obtain financing by a bank, because both the building and the lease could be pledged as security.

Mr. Turner contacted his brother-in-law John R. Stone who agreed to participate in

---

1. Plaintiff, Stone Company, Inc. is operated mainly through John R. Stone and Fiber Glass Products Inc., is operated through defendant Raymond S. Keate and for convenience the parties are referred to herein as Stone and Keate.

the transaction as the owner and lessor of the building. To do so, the plaintiff Stone Company Inc., was formed. On September 30, 1971, the plaintiff and Fiber Glass Products, Inc., entered into a lease agreement prepared by Mr. Turner. They also executed a separate option agreement. Defendant Keate was given the option to purchase the building at any time after 1 year and within 14 years from that date for a purchase price of "the amount of the first mortgage . . . $125,000 plus 10 percent of the amount of said mortgage." And it further provided that the conveyance would be "subject to all liens and encumbrances of record."

On September 27, 1971, the plaintiff and Fiber Glass Products, Inc., executed a $92,000 promissory note payable to Valley Bank & Trust Co., secured by an assignment of rents on the building. On September 30, 1971, the plaintiff obtained a $266,000 loan, secured by a trust deed, to provide the working capital for the defendant's business. Later, on October 4, 1971, the plaintiff Stone signed a $125,000 promissory note, secured by a second trust deed, for the purchase of the real property and the construction of the building.

In February of 1972 Fiber Glass Products Inc. began occupancy of the completed building under the lease and continued to so occupy it and pay the rent until July of 1974, when it discontinued business and vacated the building. However, neither Fiber Glass nor Keate ever notified plaintiff Stone of that fact and he did not become aware of it until September 9, 1974, when so notified by S. B. A. When Fiber Glass moved out of the building there had been such substantial damage to the walls, doors and floors that it was unrentable. In order to clean up and renovate the building it was necessary for plaintiff Stone to obtain a further loan, secured by a trust deed, of $15,000 and also to advance an additional $4,606 for that purpose. This project was completed the following spring, in May of 1975.

That fall, on September 9, 1975, defendant Keate gave the plaintiff Stone a notice stating that he was exercising the option to purchase the building. However, this notice stated:

. . . It is my understanding that said mortgage is in the approximate amount of $117,000 at the present time and that 10 percent added to that amount equals $128,700. It is also my understanding . . . that there are at present two liens against the property . . . in the amount of $117,000 as stated above, plus a lien . . . of approximately $15,000, for a total of $132,000, which is $3,300 more than the purchase price under the option. Because the purchase price cannot exceed $128,700, the net difference which you are obligated to refund to me is $3,300, plus delivering to me a good and sufficient warranty deed.

In response thereto plaintiff Stone expressly rejected the terms stated by the notice. However, it also asserted that it accepted the defendant's exercise of the option, but only "in accordance with the terms of the Option" and demanded that he deliver "a check in the sum of $137,500.00 ($125,000 plus $12,500)" at which time "a warranty deed to the property subject to all liens and encumbrances of record" would be delivered "in accordance with the Option agreement."

September 18, 1975, was set as a time for the parties to meet to close the transaction, but this was not accomplished because, as the trial court found, the defendant Keate did not meet the terms of the option. The trial court's view, with which we agree, is that the terms of the option made the purchase price the basic mortgage amount of $125,000, plus 10 percent thereof, amounting to $137,500, as contended by the plaintiff. The unsoundness of the defendant's position is so obvious as to hardly require comment. E. g., if the mortgage had been paid down to one half, one third, or say even down to $10,000, how incongruous it would be to argue that the option was to purchase the property for what remained due on the mortgage plus 10 percent.

 The law requires that one who desires to exercise an option must do so in accordance with its terms;[2] and where there is a substantial variance between the terms of the option and the offer to exercise it, the latter amounts only to a counter offer, which the optionor is at liberty to accept or to reject.[3] From what has been said above it is plainly apparent that the trial court was justified in its finding that the plaintiff was ready and willing to deliver the proper conveyance upon performance of the conditions of the option by the defendant Keate, but the latter did not make a valid exercise of the option.

 The next question of concern is whether the trial court was correct in refusing to declare the option void and unenforceable. Plaintiff's argument is that because the defendant Keate's purported exercise of the option was abortive, that constituted a rejection of the plaintiff's offer to sell and terminated the option. That argument represents a misconception of the distinction between an offer to sell and an option. The former, as any other offer, may be withdrawn at any time before its acceptance. Whereas, the granting of an option to sell, supported by a consideration, commits the offeror to sell according to the conditions of the option until the option by its terms expires.[4] Under the circumstances shown the trial court was justified in its view that the option given the defendant was supported by consideration and therefore was binding according to its terms.

 Related to the foregoing is the plaintiff's other ground stated as to why the option should be declared unenforceable: that it is barred by laches. In support thereof plaintiff urges that it was unfair for the defendant to stand by until after plaintiff had borrowed money and completed extensive cleaning and repair of the property and then attempt to exercise the option. The answer to this is found in the rights plaintiff conferred upon defendant under the option contract. The sound and generally recognized rule is that a party to a contract is entitled to whatever rights are granted therein, including time limitations, and that so long as he operates within them, he is not guilty of laches. In that connection it is further to be observed, that if a party is so operating within the time granted, it would surely be only in some very unusual circumstance, such as a showing of impossibility of performance, or anticipatory breach, that laches could be invoked against him. We are therefore in agreement with the trial court's refusal to declare the option void and with his view that the defendant Keate has the prerogative of exercising the option, if he does so in conformity with the conditions and time limits prescribed therein.

In view of the declaratory relief sought by both parties herein it is pertinent to make certain further comments on the option. In construing the provision that the conveyance of the property by the seller (plaintiff Stone) would be subject to "all existing liens and encumbrances of record, "the trial court declared that this included the liens created by: (1) the trust deed whereby the $266,000 loan was obtained; (2) the assignment of rents whereby the $92,000 promissory note was executed; and (3) the trust deed whereby the $15,000 loan to clean up and repair the property was obtained. Neither party complains of the foregoing. However, the plaintiff does make the contention that the trial court erred in limiting the liens as just stated.

 It urges that it is entitled to another equitable lien of $4,606 representing the additional money necessary to put the

2. *Chournos v. Evona Inv. Co.*, 97 Utah 335, 93 P.2d 450 (1939); *Nance v. Schoonover*, Utah, 521 P.2d 896 (1974); 91 C.J.S. Vendor and Purchaser § 4; Williston on Contracts, 3rd ed., Section 61D; 1A Corbin on Contracts, Sec. 264.

3. *Hawaiian Equip. Co. Ltd. v. Eimco Corp.*, 115 Utah 590, 207 P.2d 794 (1949); *Williams v. Espey*, 11 Utah 2d 317, 358 P.2d 903 (1961).

4. Restatement, Contracts 2d, Section 35A. That the rule that a rejection of the offer terminates the offeree's power to accept is not applicable to an option contract, see *Humble Oil & Refining Co. v. Westside Invest. Co.*, 428 S.W.2d 92 (Tex.1968), citing James on Option Contracts, Section 838.

building in a tenantable condition.[5] Consistent with what is said elsewhere in this decision it is our opinion that, insofar as the option contract as written is concerned, the trial court had no other choice than to apply its language; and this claim of plaintiff for an equitable lien does not qualify as "an encumbrance of record." However, this does not necessarily settle the rights and equities between these parties.

Neither the trial court nor this Court should turn a deaf ear to what impresses us as the reasonable argument that it would be manifestly unfair to permit defendant Keate to leave the property in an untenantable condition, stand by until the plaintiff had gone to the trouble and expense of its clean up and repair, and then come forward to assert his right to exercise the option to purchase. Doing justice in this case requires that the rights and equities of the plaintiff on this aspect of its claim also be properly dealt with.[6] Except as to this issue, the judgment of the trial court is affirmed. The parties to bear their own costs.

ELLETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.

---

5. Plaintiff was so required in expending such funds because, under S. B. A. regulations, no payments would be made under the lease guarantee provisions until the property was in a tenantable condition.

6. That the judgment should be for the relief to which the evidence shows a party is entitled, see Rule 54(c), U.R.C.P.