Jack B. FERRIS, Plaintiff and Respondent,

v.

Myrtle JENNINGS, Defendant and Appellant.

No. 15890.

Supreme Court of Utah.

April 25, 1979.

.

---

4. Utah, 589 P.2d 767 (1978).

5. 5 Utah 2d 415, 303 P.2d 995 (1956); see also 21 A.L.R.2d 863 and 3 A.L.R.Fed. 956 which collect a number of cases in accord.

Roger Tschanz, Salt Lake City, for defendant and appellant.

J. Richard Bell, Salt Lake City, for plaintiff and respondent.

CROCKETT, Chief Justice:

Plaintiff, as the record owner of real property at 548 Denver Street (the "Premises") in Salt Lake, commenced this action to evict defendant from the Premises. Defendant asserted as a defense and counterclaim her right to possession of the property and to purchase it under an agreement with the plaintiff.

Upon a trial to the court, it found in accordance with defendant's contention that she was in possession under an oral contract of purchase, but one which was not sufficiently definite for enforcement. The court declared that defendant was a tenant at will, and granted plaintiff judgment for possession. Defendant challenges the trial court's ruling, particularly its conclusion that the terms of the agreement were not sufficiently definite for enforcement.

Plaintiff admits having purchased the Premises in mid-1972 at defendant's request because "she needed somebody to finance it for her" and upon oral agreement to sell them to her "within a few months" for "$6,500.00, plus a fair commission." Defendant took possession by November, 1972, and had been in possession for more than four years when trial began. During that period, defendant had frequently (at least a dozen times by plaintiff's own admission) asked him to set what he considered to be the "fair commission" he was to receive, but plaintiff failed and refused to do so. It is true that during her four years in the house, defendant paid to plaintiff only $250 on whatever obligation she would have under the contract, but the record does not disclose that plaintiff has asked her for any more. She has also made repairs to the Premises involving her labor, and has spent about $500 thereon. The court noted these payments and improvements in its Findings and Conclusions, characterizing them as "limited" in nature.

In the usual case where a vendee seeks specific performance of an oral contract for the purchase of realty, the critical issue is whether there has been a sufficient performance by the vendee to foreclose the vendor from asserting the statute of frauds. Plaintiff raised a statute of frauds defense in his reply, and a major portion of the evidence related to the elements of vendee conduct and performance (i. e., vendee possession, referability of parties' actions to the claimed contract, substantiality of improvements, etc.) which determine whether the statute of frauds bars contract enforcement.[1] The Findings and Conclusions (although they characterize defendant's improvements as "limited") do not treat the fact issues which govern the applicability of the statute of frauds, and make no specific reference to the statute.

---

1. See note at 9 Utah Law Review 91 reviewing Utah case law to 1964; *Holmgren Brothers, Inc. v. Ballard*, 534 P.2d 611 (Utah 1975).

■ We decide as we do herein in awareness that, inasmuch as specific performance is an equitable remedy, the trial judge has considerable discretion in determining whether equity and good conscience require that the relief be granted.[2] But it is equally true that when the trial court has based his ruling upon a misunderstanding or misapplication of the law, where a correct one may have produced a different result, the party adversely affected thereby is entitled to have the error rectified and a proper adjudication under correct principles of law.[3] The rejection of the defendant's defense and counterclaim in this case was not based upon equitable considerations. The express ruling of the court was that the understanding between the parties for the sale of real property did not become a binding contract because neither the amount the defendant was to pay the plaintiff for his services nor the time for payment under the contract was specified.

■ We have no disagreement with the general proposition that a contract will not be specifically enforced unless the obligations of the parties are "set forth with sufficient definiteness that it can be performed."[4] But to be considered therewith is the further proposition that the parties to a contract are obliged to proceed in good faith to cooperate in performing the contract in accordance with its expressed intent. A contract is not fatally defective as to price if there is an agreement as to some formula or method for fixing it.[5] Quite beyond this, one party to a contract cannot by wilfull act or omission make it impossible or difficult for the other to perform and then invoke the other's non-performance as a defense.[6]

■ An essential starting point on the agreement between the plaintiff and the defendant was for the plaintiff to cooperate in at least stating what he considered to be his "reasonable" commission or compensation for complying with defendant's request and purchasing the property for her. The basic price for the purchase of the property, $6,500, was not indefinite nor in dispute. It was the further and adjunctive aspect of the transaction as to a reasonable compensation for the plaintiff that was not specified. Where the transaction with respect to the main subject matter of a contract is definite, an agreement for fixing reasonable compensation for some adjunctive service in connection therewith does not render the contract so indefinite as to be unenforceable.

In *Burger v. City of Springfield*,[7] plaintiff sued on a contract by which he was engaged to negotiate the City's purchase of a water works for a "reasonable compensation for services to be fixed by the Council upon the completion of his services." A Missouri statute forbade a city to make any contract except for a consideration stated in writing. The court held the standard of "reasonableness" was definite enough to permit contract enforcement.

In that opinion, the Missouri court pointed out that the law routinely enforces contracts which expressly or impliedly provide for a reasonable value to be placed on services. Where a trustee's fee is not fixed by statute or the trust instrument, the courts do not hesitate to fix a reasonable compensation, and they violate no precept against "making contracts" for parties in so acting. Courts frequently fix reasonable attorney's fees where contracts or negotiable instruments provide for them.

2. Williston on Contracts, Jaeger 3rd Edition, Section 1418; *Manufacturers Finance Co. v. McKay*, 294 U.S. 442, 55 S.Ct. 444, 79 L.Ed. 982; *Christensen v. Christensen*, 9 Utah 2d 102, 339 P.2d 101 (1959).

3. *Walker v. Peterson*, 3 Utah 2d 54, 278 P.2d 291 (1954); *State v. Whitely*, 100 Utah 14, 110 P.2d 337 (1941).

4. *Overmeyer v. Brown*, 439 F.2d 926, C.A. 10 Utah (1971); *Bunnel v. Bills*, 13 Utah 2d 83, 368 P.2d 597 (1962); *Pitcher v. Lauritzen*, 18 Utah 2d 368, 423 P.2d 49 (1967).

5. Williston on Contracts, Jaeger 3rd Edition, Section 41.

6. *Fischer v. Johnson*, 525 P.2d 45 (Utah 1974); *Cummings v. Nielson*, 42 Utah 157, 129 P. 619 (1912).

7. 323 S.W.2d 777 (Missouri 1959).

In *Rankin v. Compton*,[8] the issue was whether a contract was fatally indefinite because it provided that a "reasonable charge" should be assessed for certain financing services. The court held the parties to have fixed a sufficient standard so that the court could, without fabricating a contract, ascertain the price.[9]

 The other basis upon which the trial court placed its ruling that the agreement was not sufficiently definite for enforcement was that it failed to specify the time of payment. Two observations are pertinent: the first is that the plaintiff had refused to state what amount of money he wanted and when it should be paid, plus the fact that he had made no request upon the defendant for payment. The other is that where there is an agreement to sell property for a specified amount, the failure to designate the time of payment does not make the contract a nullity. Courts universally read into such contracts an obligation of payment within a time "reasonable" in the context of the transaction and circumstances of the parties.[10] What is reasonable is a question of fact.

On the basis of what has been said herein, we are constrained to agree with the argument of defendant that the trial court failed to apply correct principles of law in ruling upon her asserted defense and counterclaim and that she is entitled to a trial of the issues under proper application of those principles. Accordingly, it is necessary that the case be remanded for that purpose. Costs to defendant (appellant).

MAUGHAN, WILKINS, HALL and STEWART, JJ., concur.

---

8. 139 N.J.Eq. 389, 50 A.2d 642 (1947).

9. Cf. *Woolsey v. Brown*, 539 P.2d 1035 (Utah 1975).

10. Williston on Contracts, Jaeger 3rd Edition, Section 40; *Christensen v. Christensen*, 9 Utah 2d 102, 339 P.2d 101; *Pepper & Tanner, Inc. v. Kedo, Inc.*, 13 Wash.App. 433, 535 P.2d 857.