Karen R. HOFMANN, Plaintiff
and Appellant,

v.

Elizabeth S. SULLIVAN, Defendant
and Respondent.

No. 15742.

Supreme Court of Utah.

Aug. 17, 1979.

James R. Soper, Salt Lake City, for plaintiff and appellant.

Edwin F. Guyon of Robinson, Guyon, Summerhays & Barnes, Salt Lake City, for defendant and respondent.

STEWART, Justice:

This is an appeal from an action for specific performance of an option agreement or in the alternative for damages arising from the alleged breach of an option to purchase real property. The trial court, sitting without a jury, concluded, *inter alia*, that the plaintiff was not entitled to specific performance or other relief and accordingly entered judgment in favor of the defendant. We reverse and remand.

On or about October 15, 1976, the plaintiff ("Lessee") and the defendant ("Lessor") entered into an agreement for the lease of real property owned by the Lessor. The lease provided for a term of one year from October 15, 1976, to October 15, 1977, with the Lessee to pay the Lessor a monthly rental of $375. The lease also contained two provisions providing for the sale of the leased property by the Lessor to the Lessee at the end of the lease. One granted the Lessee an option to purchase the premises at the expiration of the lease for a price of $49,500. The other provision granted the Lessee a first right of refusal.

Both the Lessor and the Lessee had signed copies of the lease, but the copies were not identical. The Lessee's copy of the lease granted to the Lessee an option to purchase the property for $49,500, with $100 per month of the agreed rental to be applied on the sale price. That option provision further provided that "if the Lessee does not wish to exercise this option, the full amount of monthly rental shall be reverted to rental only and be considered as [sic] obligation to carrying out terms of the lease." Clearly, there was no ambiguity whatsoever in that provision; and a strict application of it vested in the Lessee the right to purchase the property at the stated amount.

The trial court found that the Lessor's copy of the lease inadvertently omitted the following paragraph from the agreement which was kept in Lessee's possession:

Upon expiration of this lease, the Lessee shall have first right of refusal in signing of a lease for this [sic] premises, and first right of refusal in acceptance of the sale of said premises.

The trial court concluded:

. . . [t]hat the omission created ambiguity as to the Plaintiff's right to purchase the property. At the time Plaintiff signed said agreements she intended to enter an agreement whereby she would have the right to purchase the premises upon the expiration of the lease. However the evidence was that the parties dealt with each other in a lessor-lessee relationship in which Defendant retained some discretion as to whether or not she would sell the property.

Whatever ambiguity that was created by the omission was clearly rectified by the trial court's finding that both the first right of refusal and the option clauses were valid parts of the contract.

The trial court made no finding, either as a matter of law or fact, that the first right of refusal clause prevailed over the option to purchase clause. Indeed, the crux of the trial court's legal conclusion in this regard is as follows:

That the agreement between the parties was ambiguous in two respects:

(1) One of the two written agreements had an omitted Paragraph due to an inadvertant [sic] error of Defendant in drafting the agreement.

(2) In the event of exercise of the option no provision was made as to how and when payments would be made.

Thus the trial court expressly recognized the validity of the option clause, but apparently held it unenforceable because of the lack of provisions as to how and when payments would be made.

On the basis of these findings and conclusions, it is not possible to sustain the trial court's result.

 The option clause and the first right of refusal clause are not inconsistent. Indeed, we should make an effort to construe the agreement as drafted to make sense, rather than to construe it to be inconsistent. Clearly the parties intended that the Lessee could purchase the property at a price no higher than the figure stated in the option clause, less partial application of the lease payments. If the Lessee did not wish to purchase the property at that price, she had the second option of purchasing the property at a price a third party would be willing to offer.

The Lessee made a reasonable and effective effort to exercise the option by letter dated September 19, 1977. The Lessee, through her attorney, wrote the following letter:

September 19, 1977

Mrs. George M. Sullivan
669 East 4129 South
Salt Lake City, Utah 84107

Dear Mrs. Sullivan:

I have been retained by Karen Hofmann to represent her interest relative to a lease with an option to purchase real property. On the 15th day of October, 1966 [sic] you and Karen Hofmann entered into a lease whereby Ms. Hofmann leased from you the premises at 4092 South 670 East, Salt Lake City, Utah. Included in that lease agreement is an option agreement giving Ms. Hofmann the right to buy the premises for the price of $49,500.00 less the sum of $1200.00 paid as a portion of the rental price.

On behalf of Ms. Hofmann, I hereby give you notice of her intent to exercise this option and to purchase said real property at the price agreed upon. I realize that this option cannot be exercised before the expiration of the lease on October 15, 1977, and this notice to you is expressly intended to serve as an exercise of the option on that date.

Please feel free to contact this office regarding the selection of a date to close the sale and details thereof. Thank you.

Yours Very Truly,
/s/
James R. Soper

The Lessor responded through her attorney as follows:

Dear Ms. Hofmann:

We are in receipt of the letter from your attorney, Mr. Soper, stating your desire to purchase Mrs. Sullivan's condominium.

At the expiration of your present lease, there will not be a new lease or a sale; consequently, there will arise no first right of refusal.

The letter goes on to explain that the Lessor had decided to occupy the premises. In a letter of the same date the Lessor wrote directly to the Lessee stating, in part:

I am very sorry about the outcome of this as it is not to either of our advantages and will be costly to both of us. I feel confident we could have worked out some-something more satisfactory. However, as events have transpired it will be a convenience to my family to allow them to occupy the condominium. My son and his wife have purchased a home and now have a sale for theirs but will be unable to get into their new place until the first of the year.

In short, there was no denial either by the Lessor herself or by her attorney of the right of the Lessee to purchase the premises; there was simply a flat refusal to sell and to renew the lease for strictly personal

reasons. Indeed, there is no mention at all by Lessor's attorney of the option to purchase which unmistakably was asserted in the September 19, 1977, letter to the Lessor.

■ The trial court justified its denial of specific performance on the ground that there was no "showing of ability to comply with any option if one be found to exist." However, the adamant and unequivocal refusal of the Lessor to comply with the terms of the contract dispensed with the need to show ability to comply by the Lessee with a tender or some other such means. In truth, the Lessor's action amounted to a repudiation of the contract which gave the Lessee a right of action at the time of the Lessor's repudiation. Certainly it is clear that because of the acts of the Lessor there was no reason for Lessee to have to demonstrate ability to comply, even if that were a requirement of the law.

■ The trial court's finding that there was ambiguity in the option provision because there was "no provision . . . made as to how and when payments would be made" is unsupportable. The option price was fixed, and as to that there was no dispute. In general, such a provision calls for a payment of cash at the time of the exercise of the option; hence, as a matter of law, there was no ambiguity as to how and when payments would be made.

Just recently this Court sustained a contract which was more ambiguous than the pertinent provision in the instant contract. In *Ferris v. Jennings*, Utah, 595 P.2d 857, (1979), this Court affirmed the enforceability of a contract in which the only term fixed was the purchase price. A commission to be paid one of the parties, which was entirely indefinite and ambiguous, was held to be no obstacle to enforcement of the contract. In language directly pertinent to this case, this Court there stated:

> . . . where there is an agreement to sell property for a specified amount, the failure to designate the time of payment does not make the contract a nullity. Courts universally read into such contracts an obligation of payment within a time "reasonable" in the context of the

transaction and circumstances of the parties. What is reasonable is a question of fact.

See also *Christensen v. Christensen*, 9 Utah 2d 102, 339 P.2d 101 (1959); *Pepper & Tanner, Inc. v. Kedo, Inc.*, 13 Wash.App. 433, 535 P.2d 857 (1975).

For the foregoing reasons this case is reversed and remanded for further proceedings consistent with the views expressed herein.

CROCKETT, C. J., WILKINS and HALL, JJ., and GEORGE E. BALLIF, District Judge, concur.

MAUGHAN, J., having disqualified himself, does not participate herein.