**UPLAND INDUSTRIES CORPORA-
TION, Plaintiff and Appellant,**

**v.**

**PACIFIC GAMBLE ROBINSON COM-
PANY, a corporation, Defendant
and Respondent.**

**No. 18850.**

Supreme Court of Utah.

June 20, 1984.

J. Clare Williams, Salt Lake City, for plaintiff and appellant.

Douglas J. Parry, Steven D. Smith, Salt Lake City, Dale E. Kremer, Seattle, Wash., for defendant and respondent.

HALL, Chief Justice.

Plaintiff Upland Industries appeals from a summary judgment, wherein it was found in breach of a lease agreement and, pursuant to the purchase option provisions of said lease, was ordered to convey to defendant Pacific Gamble Robinson the property to which the option provisions were applicable.

In 1957, defendant, a wholesaler of fresh fruits and vegetables, entered into an agreement with plaintiff's predecessor in interest, Union Land Company (also referred to hereafter as "plaintiff"), whereby defendant would build a warehouse facility to suit its specific needs in Salt Lake City and, upon completion, would sell the warehouse to and lease it back from Union. Under the lease, defendant was entitled to occupy the warehouse property for an initial ten-year term and, if it so elected, to extend the lease "upon the same terms and conditions" for three additional five-year terms. To so extend the lease, it was necessary that defendant exercise an extension option provided in the lease (Section 18 of the lease) and that it do so by written notice to plaintiff at least six months prior to the expiration of each term. Rent during the potential twenty-five-year life of the lease was to remain constant. The lease also gave defendant an "option to

purchase" (Section 17) the warehouse property at a price calculated under a specific formula. To be exercised properly, this latter option also required written notice to the lessor at least six months prior to the expiration of any term.

Notice to extend the lease to a second term (i.e., the first five-year term) was due on or before June 30, 1967. Defendant sent a letter to plaintiff on June 20, 1967, wherein it stated: "We now wish to exercise this option with a further provision allowing us to cancel the lease upon 90 days written notice." Plaintiff responded first with a telephone call, then with a letter dated August 2, 1967. In the letter, plaintiff expressed disfavor with the requested cancellation provision, pointing out that such a modification in the terms of the lease agreement would necessitate other changes as well (*e.g.*, upward adjustment of rents). Notwithstanding, plaintiff did not altogether reject the request, nor did it express any reservation by reason of the request as to the effectiveness of defendant's letter in exercising the extension option.

On December 28, 1967, plaintiff sent another letter to defendant reminding it of the impending expiration of the lease (on December 31, 1967) and encouraging it to return signed copies of the original "extension" riders (that did not contain the requested ninety-day cancellation clause).[1] Defendant responded by letter on January 3, 1968, expressing its continuing desire to have the cancellation clause added to the terms of the lease. The extension riders requested by plaintiff were not included or even mentioned in defendant's January 3 correspondence.

On November 29, 1968, plaintiff sent to defendant for its signature a "renewal" rider, which incorporated both defendant's requested cancellation clause and a provision allowing for rental revision as required by plaintiff. In a letter dated January 7, 1969, defendant rejected the proposed renewal and requested anew the in-

---

1. The lease did not require the signing of an "extension rider" in order to effectively exercise the extension options. Such "riders" were used by plaintiff merely as a matter of form.

corporation of a cancellation clause in the original lease.

In its next letter to defendant, dated February 9, 1970, plaintiff asserted for the first time that defendant's exercise of the option to extend the lease, having been conditioned upon plaintiff's acceptance of the requested modification (i.e., cancellation provision), was invalid and that as a consequence defendant had been occupying the premises as a mere hold-over tenant "subject to the lease provisions of the original agreement." Plaintiff further proposed in that letter that a new lease be executed. Through a subsequent exchange of several letters on this subject, defendant expressed the position that it had effectively exercised the option to extend through its letter of June 20, 1967, and that the parties had never intended to make the proposed cancellation provision a condition to the exercising of that option.

In mid-1971, plaintiff informed defendant that its purported hold-over tenancy was subject to all of the terms of the original lease, except the purchase option, and that defendant could continue occupancy beyond December 31, 1971, only be executing a new lease. Furthermore, plaintiff warned that if defendant should refuse to execute a new lease plaintiff would bring a legal action against defendant and have it evicted from the premises. Once more, defendant maintained its position that the option had been exercised effectively and refused to execute a new lease. It further sent plaintiff written notice on June 15, 1971, of its intention to exercise the option for the third term of the lease (i.e., the second five-year term). Plaintiff apparently took no action toward rejecting this latter exercise.

Despite plaintiff's threats, no legal action was ever taken. The parties continued to perform according to the terms of the original lease. Defendant exercised its final option to extend in 1977 and in 1978 attempted to exercise the option to purchase by tendering a check to plaintiff. Plaintiff

rejected that tender, however, and shortly thereafter (December 28, 1978) filed this action requesting an adjudication of the respective rights and duties of the parties under the lease. Defendant counterclaimed for specific performance. Cross-motions for summary judgment were filed, and the matter was submitted for decision on the basis of deposition testimony and documents stipulated to be authentic and admissible. Judgment was entered in favor of defendant. We affirm.

The principal dispute in this appeal is with respect to the validity of defendant's exercise of the first option to extend the lease. As noted previously, defendant's notice of intent to exercise the said option was given in a letter dated June 20, 1967, which stated: "We now wish to exercise this option with a further provision allowing us to cancel the lease upon 90 days written notice."

Plaintiff's position is that the exercise was invalid because it was "conditioned" upon plaintiff's acceptance of a "material" modification (i.e., the cancellation provision) in the lease. It cites as supportive the following general rule governing the exercise of options:

> When the optionee decides to exercise his option he must act unconditionally and precisely according to the terms of the option.... Nothing less will suffice unless the optioner waives one or more of the terms of the option.
>
> ....
>
> The general attitude of the courts is to construe the attempt to accept the terms offered under the option strictly.
>
> The optionee is in the simple position of either accepting or not.[2]

Plaintiff also relies upon a summarization of the foregoing rule rendered by this Court in *R.J. Daum Construction Co. v. Child.*[3]

> [A]n acceptance requires manifestation of unconditional agreement to all of the terms of the offer.... [T]here must be

**2.** Williston on Contracts § 61D (3rd ed. 1957).

**3.** 122 Utah 194, 247 P.2d 817 (1952).

made manifest a definite intention to accept the offer ... without material reservations or conditions.

....

A conditional acceptance is in effect a statement that the offeree is willing to enter into a bargain differing in some respect from that proposed in the original offer. The conditional acceptance is, therefore, itself a counter-offer and rejects that original offer, so that thereafter even an unqualified acceptance of that offer will not form a contract.[4]

In rejoinder, defendant argues that its notice letter complied in all respects with the rules governing the exercise of options, including those relied upon by plaintiff (above), and thus was an effective exercise of the option. It cites another dimension of the aforestated rule, to wit, "[i]f an offer is accepted as made, the acceptance is not qualified or conditional because of the expression of a hope, request, or suggestion ...," [5] and argues that the requested cancellation clause was neither intended by defendant nor understood by plaintiff to be a condition to the exercise of the option, but was considered by all to be a mere request, having no impact whatsoever upon the effectiveness or validity of the lease.

■ Upon reviewing the record to determine the precise question as to whether the cancellation privilege was simply requested or demanded as a condition to exercising the option, we find the evidence therein supportive of defendant's position, as well as the trial court's ruling.

Defendant's intention to exercise the option without any reservation or condition is evident in the language used in the notice letter itself. The letter expressly states that the extension is being "exercised" ("We now wish to exercise this option ...")

and describes the proposal for a cancellation privilege as a "request" ("The situation ... makes necessary this request for a cancellation privilege ..."). Furthermore, the letter does not state that the exercise is conditioned upon plaintiff's acceptance of the proposed privilege.

Again in a letter sent to plaintiff January 7, 1969, defendant revealed the intended character and impact of its notice letter: "In our letter of June 20, 1967 *exercising the option* for the five year extension, we also *requested* a provision for termination on 90 days notice." (Emphasis added.)

That plaintiff understood the subject proposal to be nothing more than a mere request and recognized the notice letter to be an effective exercise of the option is evidenced in plaintiff's correspondence to defendant dated August 2, 1967. This particular letter was sent in response to the notice letter and stated in part:

Reference is made to our telephone discussion and your letter of June 20 *in connection with extension of lease* L & T No. 15825, Audit No. 2161, covering warehouse facilities at Salt Lake City. You *request*, in *exercising the option*, a change in the lease to permit Pacific Gamble Robinson to terminate it on ninety days' notice. [Emphasis added.][6]

Perhaps the most salient evidence of plaintiff's state of mind at the time it received and responded to the notice letter is a deposition statement taken from Claude Summerhays, plaintiff's manager and author of most of the correspondence with defendant prior to the 1970 assertion that the exercise attempt had been ineffective:

Q. Now, in the second paragraph of that letter Mr. Feltz states, "We now wish to exercise this option with a fur-

---

4. *Id.* at 819, 822.

5. *Ryan v. Glenn,* 52 F.R.D. 185, 193 (N.D.Miss. 1971) (quoting 91 C.J.S. Vendor and Purchaser § 31b(4) (1955)).

6. This letter was written by Claude Summerhays, Union's branch manager (and later, after the merger of Union and Upland Industries, Upland's manager as well) and principal negoti-

ator of the lease with defendant. It is illustrative of his, and presumably his company's (plaintiff's), understanding of the nature and effect of the notice at the time it was sent by defendant. The subsequent attempt by plaintiff's counsel (in the February 9, 1970 letter) to place a different construction on the notice letter was untimely and ineffective.

ther provision allowing us to cancel the lease upon a 90-day written notice." *Did you consider the second clause of that paragraph to be a condition upon the exercise of the option?*

A. *I would not,* but if it came to a question of the need to determine that I would ask advice from my counsel. [Emphasis added.]

In addition to the foregoing evidence, the conduct of the parties subsequent to the June 20 notice letter demonstrates their understanding that the lease term had been extended. As was stated in *Smith v. Arthur D. Little, Inc.*:[7]

A construction given to an exercise of an option to extend a lease by the acts and conduct of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight, and will, when reasonable, be adopted and enforced by the court. [Citations omitted.] "The reason underlying the rule is that it is the duty of the court to give effect to the intention of the parties where it is not wholly at variance with the correct legal interpretation of the terms of the contract, and a practical construction placed by the parties upon the instrument is the best evidence of their intention." (*Rosen v. E.C. Losch Co.* (1965) 234 Cal.App.2d 324, 331, 44 Cal.Rptr. 377, 381.)[8]

The record shows that both parties continued to perform under the terms of the lease after the notice letter had been sent. Such performance continued for nearly two and one-half years without any hint from plaintiff that the lease had not been effectively extended or that the status of defendant's tenancy was anything less than what it was prescribed to be under the lease. Then, after plaintiff changed its position in this regard in 1970 and 1971, performance continued as it had pursuant to the lease until 1978, when plaintiff refused to allow defendant to exercise the purchase option.

Accordingly, we affirm the trial court's ruling that the notice letter of June 20, 1967, constituted an effective and timely exercise of the option to extend the lease.

Plaintiff argues in the alternative that even assuming the trial court did rule correctly in respect to the validity of the extension of the lease, it erred in granting defendant judgment on the counterclaim. Plaintiff asserts that the counterclaim was barred by the statute of limitations inasmuch as it was not filed within the requisite six years after the causes of action alleged therein had arisen.[9] It maintains that said causes of action (to wit: breach of contract, specific performance and declaratory judgment) arose back in 1970 at the time plaintiff gave notice to defendant that the lease had not been extended and that defendant was occupying the status of a hold-over tenant. It points out that the counterclaim was not filed until 1979, which was clearly beyond the six-year limitation period.

Plaintiff's position as to the time the alleged causes of action arose purportedly comports with the well-settled rule that "[a] cause or right of action arises the moment an action may be maintained to enforce it.... [T]he statute of limitations is then set in motion."[10] Plaintiff also places reliance upon the decision rendered by this Court in *Christiansen v. Utah-Idaho Sugar Co.*[11] In that case, which involved a breach of implied covenants in a warranty deed, the Court held that the statute of limitations commenced running at the time the grantee received notice of an encumbrance against the property.[12] While recognizing that the facts of *Christiansen* are distinguishable, plaintiff none-

---

7. 276 Cal.App.2d 391, 81 Cal.Rptr. 140 (1969).

8. *Id.* at 145. *See also Jensen v. O.K. Investment Corp.,* 29 Utah 2d 231, 507 P.2d 713, 716 (1973).

9. The applicable statute of limitations is found at U.C.A., 1953, § 78–12–23(2).

10. *Sweetser v. Fox,* 43 Utah 40, 134 P. 599 (1911).

11. Utah, 590 P.2d 1251 (1979).

12. *Id.* at 1252–53.

theless proposes that the rule of that case as to the time an action accrues should have application here. We disagree.

Plaintiff's argument overlooks the generally accepted rule that a cause of action on a contract accrues, thus causing the statute of limitations to commence, only upon *breach* of the contract.[13] Plaintiff's mere assertion in 1970 and 1971 with respect to the status of defendant's tenancy did not constitute an actual *breach* of the lease agreement. Such a breach did not occur until 1978 when plaintiff actually refused to convey the property to defendant as required under the purchase option provision of the lease. Prior to that time, plaintiff fully complied with every provision of the lease, including Section 18 thereof, which provided for the extension of the lease through two additional five-year terms (i.e., from 1973 to 1977 and from 1978 to 1982).

Plaintiff's reliance upon *Christiansen* is misplaced. As pointed out above, that case, unlike the present, involved the implied covenant against encumbrances characteristic of a warranty deed. Pursuant to such a covenant, a grantor obligates himself either to clear up any encumbrances that may be discovered or to indemnify the grantee.[14] Said obligation becomes effective immediately upon the discovery of an encumbrance. A grantor who fails to discharge such obligations thus commits a present and actual breach of warranty. In this case, by contrast, plaintiff did not commit an actual or present breach by merely asserting the invalidity of the lease, especially considering its continuous performance under the terms of the very lease it purported to defy.

At most, plaintiff's assertion in 1970, as well as that in 1971 with respect to the

expiration of the purchase option, was an anticipatory breach or repudiation of the lease agreement.[15] "An anticipatory breach of contract is one committed before the time has come when there is a present duty of performance, and is the outcome of words or acts evincing an intention to refuse performance in the future."[16] Defendant therefore had the right to elect either to treat the repudiation as effective and bring suit at once or to continue to treat the repudiation as ineffective and bring suit if and when an actual breach occurred.[17] Defendant clearly chose the latter course of action.

We affirm the judgment of the trial court.

STEWART, HOWE and DURHAM, JJ., and BOYD BUNNELL, District Judge, concur.

OAKS, J., having resigned, does not participate herein, BUNNELL, District Judge, sat.

---

13. *See Western Casualty & Surety Co. v. Evans* (Ariz.App.), 130 Ariz. 333, 636 P.2d 111 (1981); *Smith v. Galio* (N.M.App.), 95 N.M. 4, 617 P.2d 1325 (1980).

14. *Supra* n. 12.

15. Although plaintiff also argues that defendant's action for declarative relief arose in 1970 and 1971, it concedes the inapplicability of the

statute of limitations to that particular cause of action. *See Western Casualty, supra* n. 13; Annot., 151 A.L.R. 1076 (1944).

16. 17 Am.Jur.2d Contracts § 448 (1964).

17. U.C.A., 1953, § 70A–2–610(a); *Dill v. Public Utility District No. 2 of Grant County*, 3 Wash. App. 360, 475 P.2d 309 (1970); *Gold v. Killeen*, 44 Ariz. 29, 33 P.2d 595 (1934).