**Robert M. MILLS and Donna H. Mills, Plaintiffs and Appellees,**

v.

**Jana Jean BRODY, Defendant and Appellant.**

**No. 960186–CA.**

Court of Appeals of Utah.

Dec. 12, 1996.

---

Matthew W. Driggs, Driggs, Osborne and Huang, P.C., Salt Lake City, for Defendant and Appellant.

Jeffrey Swinton, Salt Lake City, for Plaintiffs and Appellees.

Before BENCH, GREENWOOD and WILKINS, JJ.

## OPINION

BENCH, Judge:

Jana Brody appeals the trial court's entry of summary judgment in favor of Robert and Donna Mills. We affirm.

## FACTS

On February 3, 1993, Brody entered into an agreement to lease the Millses' condominium. The lease agreement contained an option to purchase the condominium. Brody's husband drafted the option, which provided in pertinent part:

"Purchaser" [Brody] shall retain for a period of twenty[-]four months, commencing February 15th, 1993, an option to purchase the real property located at 1593 East 6430 South, Holladay, Utah, for the sum of One Hundred Fifty[-]Five Thousand and no/100....

Payments made during the term of the lease shall be applied, in the event that the purchase is completed, $50 towards the principal and $1,150.00 towards rental to include interest, taxes, insurance, and association fees.

In June 1994, Brody called the Millses, who had moved out of state for two years, to express her interest in exercising the option. Robert Mills then notified the Brodys of the name, address, and telephone number of the attorney the Millses had authorized to act on their behalf. Although Mills suggested that the Brodys contact the attorney, they never did so. In December 1994, Brody's husband called the Millses and said that he was trying to secure financing and planned to purchase the condominium in January 1995. At some point, the Brodys attempted to sell the condominium to obtain the purchase price. The Millses claim that in early February 1995, Brody's husband contacted them and explained that he could not obtain financing to purchase the condominium.

On February 9, 1995, Brody's husband again called Robert Mills. Brody claims that, during that conversation, her husband orally exercised the option on her behalf. She asserts that Robert Mills acknowledged the exercise of the option and asked to postpone closing the transaction until mid-March, when the Millses would return to Salt Lake City. On February 13, 1995, Brody's husband sent the Millses a letter, which stated that "we will be exercising our option to purchase the condominium," but made no reference to the earlier telephone conversation.

The Millses received the letter on February 14, 1995. The following day, their attorney sent Brody a letter stating that the option had expired unexercised because Brody had not paid the purchase price before the close of the option period. After the lease period expired, Brody continued to occupy the condominium without paying rent. Brody never tendered the purchase price of the condominium.

The Millses filed an action seeking Brody's eviction from the condominium, treble damages for holding over, attorney fees, and costs. Brody filed a counterclaim, demanding the Millses' performance of the option agreement. The Millses moved for summary judgment, claiming that Brody failed to exercise the option by the close of the option period. The trial court granted the Millses' motion for summary judgment, ordering Brody to vacate the condominium and pay treble damages, attorney fees, and costs.

On appeal, Brody raises the following issues: (1) whether tender of payment was required to exercise the option to purchase; (2) whether Brody exercised the option orally and in writing; (3) whether the Millses orally extended the option period; and (4) whether the Millses should be estopped from refusing to sell their condominium.

## STANDARD OF REVIEW

■ Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c). Because summary judgment presents only questions of law, we review the trial court's decision under a standard of correctness, according no deference to the trial court's legal conclusions. *Cook v. Zions First Nat'l Bank*, 919 P.2d 56, 59 (Utah App.), *cert. denied*, 925 P.2d 963 (Utah 1996). "We determine only whether the trial court correctly held that no disputed issue of material fact exists and whether the trial court properly applied the governing law." *Id.* In reviewing the trial court's decision, we view the facts in the light most favorable to the losing party. *Hamilton v. Parkdale Care Ctr., Inc.*, 904 P.2d 1110, 1112 (Utah App. 1995).

## ANALYSIS

■ Where an option agreement contains the terms "purchase" or "buy," and particularly where no other mode of exercise is specified, courts have interpreted the

agreement to require payment to exercise the option. *See Christian v. Giard*, 3 Mass. App.Ct. 770, 330 N.E.2d 855, 856 (1975) (requiring tender of payment to exercise option containing no provision for notice); *Shellhart v. Axford*, 485 P.2d 1031, 1034 (Wyo.1971) (stating that "an essential step in the exercise of a purchase option is payment of the purchase price"). In *Shellhart*, while recognizing that the option also required notice to exercise, the court emphasized that

> the option granted to [plaintiff] was an option "to purchase" real estate "for the sum of $12,000.00." When these terms are given meaning and effect, it becomes clear the intent of the parties was for payment of the purchase price to be a necessary part of the "exercise" of the option.

485 P.2d at 1034. Similarly, in *Rogers v. Jones*, 126 Ariz. 180, 613 P.2d 844 (1980), the court reviewed an agreement providing "an option to purchase the leased premises on or before termination of this lease, for the sum of [$950.00] per irrigable acre." *Id.* at 846 (alteration in original) (emphasis omitted). The court held that the agreement itself required "full payment in cash on or before the termination date" and that requirement "was an integral part of the option." *Id.* Finally, in *Nance v. Schoonover*, 521 P.2d 896 (Utah 1974), the agreement provided an "option and right to purchase" property by a certain date. *Id.* at 896. The option stated in relevant part: "The agreed purchase price for said real property is $18,000. If parties of the Second Part exercise this option and purchase said property, they shall be entitled to credit for the option price of $1000.00 making the remaining purchase price to be paid in cash $17,000.00." *Id.* The Utah Supreme Court interpreted the agreement to require "plaintiffs to pay the $17,000 in cash *within the period specified.*" *Id.* at 897 (emphasis added).

In this case, the parties' agreement gave Brody an "option to purchase the real property ... for [$155,000]" by February 14, 1995. The agreement contemplates no method of exercise other than "purchasing" the property for $155,000. Therefore, under the terms of the agreement, the only way Brody could properly exercise the option was to purchase the property. Because Brody failed to tender the purchase price before the close of the option period, she did not exercise the option. *See id.* ("This court has long adhered to the rule that an option must be exercised in accordance with its terms."); *Coombs v. Ouzounian*, 24 Utah 2d 39, 41, 465 P.2d 356, 357 (1970) (holding tender of payment necessary where option requires payment for exercise).

Furthermore, the Utah Supreme Court has held that, unless otherwise provided in the option agreement, the law implies that tender of payment is required at the time of exercise of the option. *Hofmann v. Sullivan*, 599 P.2d 505, 508 (Utah 1979); *see also Greenbaum v. Cortez*, 644 S.W.2d 510, 511 (Tex.Ct.App.1982) ("Where a contract provides for a fixed sum but has no provision concerning time or method of payment, the general rule is that the consideration is to be paid in cash upon the exercise of the option."). In *Hofmann*, the supreme court reviewed a trial court's decision holding an option clause unenforceable for ambiguity since the clause failed to provide the method and time of payment. 599 P.2d at 507. In reversing the trial court, the supreme court stated that "[t]he option price was fixed, and as to that there was no dispute. *In general, such [an option] provision calls for a payment of cash at the time of the exercise of the option.*" *Id.* at 508 (emphasis added). The court concluded that "as a matter of law, there was no ambiguity as to how and when payments would be made." *Id.* Therefore, although Brody contends the option agreement is ambiguous regarding time of payment, the option agreement is unambiguous because, under Utah law, payment was due before the close of the option period.

The *Hofmann* court cited *Ferris v. Jennings*, 595 P.2d 857 (Utah 1979), in support of the principle that contracts not specifying time of payment are unambiguous and enforceable. *Hofmann*, 599 P.2d at 508. The *Ferris* court held that "the failure to designate the time of payment does not make the contract a nullity. Courts universally read into such contracts an obligation of payment within a time 'reasonable' in the context of the transaction and circumstances of the

parties." *Ferris,* 595 P.2d at 860. While the times of payment expressed in *Hofmann* and *Ferris* may appear inconsistent, both cases simply hold that contracts failing to provide a time of payment are unambiguous and will be enforced by the courts. *Hofmann,* 599 P.2d at 508; *Ferris,* 595 P.2d at 860. Because the narrow issue in *Hofmann* was whether the absence of an express time of payment nullified the contract, 599 P.2d at 508, the difference in the ultimate time of payment is not material to the issue in this case.[1] The dissent erroneously uses *Hofmann*'s quotation of *Ferris* to suggest that the *Hofmann* court embraced for option agreements *Ferris*'s "reasonable time" rule. As stated above, the *Hofmann* court relied on *Ferris* only to support the court's conclusion that contracts not specifying time of payment are enforceable. Therefore, the dissent's reliance on *Hofmann* to support a "reasonable time" rule for payment in option agreements is misplaced.

We conclude that, under controlling Utah law, options to purchase that fail to specify mode of exercise or time of payment must be read to require payment upon exercise. *Hofmann,* 599 P.2d at 508; *Nance,* 521 P.2d at 897. Brody failed to tender payment before the closing date of the option period. Therefore, regardless of Brody's alleged attempts to exercise the option,[2] or the Millses' alleged acknowledgment thereof, the option to purchase expired unexercised.

■ Brody argues, however, that the Millses orally extended the date of payment in this case. The trial court determined that the statute of frauds would void any oral

modification of the option agreement. The Utah Supreme Court has held:

> An option to purchase is an interest in real estate and is within the statute of frauds. An extension of a contract which is required to be in writing is not enforceable, by the majority rule, in the absence of an estoppel, if it does not comply with the statute of frauds.

*Coombs,* 465 P.2d at 358 (footnote omitted); *see also Wardley Corp. v. Burgess,* 810 P.2d 476, 477 (Utah App.1991). Therefore, the trial court properly determined that any oral modification of the option agreement was void under the statute of frauds. *See* Utah Code Ann. § 25–5–3 (1995).

■ Finally, Brody failed to preserve her claim that the Millses should be estopped from refusing to sell their condominium. Although Brody mentioned estoppel in her answer and made some references to the issue in a hearing before the trial court, these nominal references did not sufficiently raise the issue to a "level of consciousness" before the trial court. *James v. Preston,* 746 P.2d 799, 802 (Utah App.1987). Because Brody failed to provide the trial court with any legal authority, the trial court could not properly rule on the issue. *See LeBaron & Assocs., Inc. v. Rebel Enters., Inc.,* 823 P.2d 479, 483 (Utah App.1991) (stating that "mere mention of an issue in the pleadings, when no supporting evidence or relevant legal authority is introduced at trial in support of the claim, is . . . insufficient to preserve the issue for appeal"). Accordingly, we do not address Brody's estoppel argument.

---

1. The difference in the time of payment in *Hofmann* and *Ferris* results from a fundamental distinction in the type of contract under consideration. *Hofmann* dealt with an option to purchase contained in a lease agreement. 599 P.2d at 506. Option agreements become bilateral contracts for the sale and purchase of land only upon exercise of the option in accordance with its terms. *Anderson v. Overland Park Credit Union,* 231 Kan. 97, 643 P.2d 120, 125 (1982); *Maloff v. B–Neva, Inc.,* 85 Nev. 471, 456 P.2d 438, 439 (1969). *Hofmann* provides that for options to purchase, where time of payment is not specified in the agreement, the law implies that payment is required at the time of exercise. 599 P.2d at 508. In contrast, *Ferris* dealt with an executory bilateral contract. 595 P.2d at 858. Where the terms of a bilateral contract fail to specify the required time of per-

formance, courts imply a "reasonable time" for completion of performance. *Bradford v. Alvey & Sons,* 621 P.2d 1240, 1242 (Utah 1980); *see also McFarland v. Joint Sch. Dist. No. 365,* 108 Idaho 519, 700 P.2d 141, 143–44 (App.1985).

2. At best, the letter from Brody's husband stating that "we will be exercising our option to purchase the condominium" is ambiguous. In contrast, the letter exercising the option in *Hofmann* stated: "[T]his notice to you is expressly intended to serve as an exercise of the option." 599 P.2d at 507. A plain reading of the letter in this case suggests that Brody intended to exercise the option at some future date. The letter is consistent with her argument that the parties had orally agreed to postpone closing the transaction.

## CONCLUSION

The trial court properly granted the Millses' motion for summary judgment. Viewing the facts in the light most favorable to Brody, the parties do not dispute that Brody failed to pay the purchase price before the close of the option period. Moreover, the statute of frauds barred any oral modification of the option period. Therefore, under Utah law, the option expired unexercised. Accordingly, the Millses were entitled to judgment as a matter of law. We affirm the trial court's entry of summary judgment.

GREENWOOD, J., concurs.

WILKINS, Judge (dissenting):

I respectfully dissent. I would reverse and remand the summary judgment on the basis that the option was exercised, and a dispute of material fact exists with regard to when payment of the purchase price was required.

## BACKGROUND

In reviewing a grant of summary judgment, this court views the facts and inferences in the light most favorable to the losing party. *Winegar v. Froerer Corp.*, 813 P.2d 104, 107 (Utah 1991). As such, we must recite the facts in the light most favorable to Brody. The facts critical to our review are as follows.

Brody's agent telephoned Robert Mills on February 9, 1995. During the conversation, Brody orally exercised the option to purchase the condominium. Robert Mills, in acknowledging the exercise of the option, stated that immediate payment was unnecessary and agreed to close upon the Millses' return to Salt Lake City. On February 13, 1995, Brody sent the Millses a letter to acknowledge in writing the February 9 telephone conversation. The letter stated, "[W]e will be exercising our option to purchase the Condominium." In the letter, Brody requested the name and number of the attorney the Millses had engaged to help close the sale. Brody also suggested she could close the purchase "anywhere from now to the time that you get back to town.... [S]ince you're returning March 23rd, if you would like the closing to

coincide with that date, that is fine with me." The parties agreed to close between March 20 and 24. Brody then contacted a title company and arranged to begin closing procedures.

Upon receiving the letter from Brody on February 14, 1995, the Millses had their attorney send a letter, dated February 15, 1995, informing Brody that the option had expired unexercised, because Brody had not tendered the full purchase price on or before February 14, 1995. The letter stated the Millses planned to return to their condominium on March 1, 1995, when the lease expired. The Millses, however, later orally agreed to extend the lease through March 15, 1995.

On March 15, 1995, the oral extension of the lease agreement expired. Brody did not tender the purchase price, nor did she escrow the fund pending resolution of the dispute, because the Millses had stated they would not accept payment.

The Millses filed a complaint and a subsequent motion for summary judgment in district court claiming that Brody failed to timely exercise the option to purchase. Brody counterclaimed, seeking specific performance of the option contract. The district court granted the Millses' Motion for Summary Judgment.

On appeal, Brody argues the trial court erroneously granted summary judgment because genuine issues of material fact exist regarding: (1) whether the option required payment to exercise; (2) whether the option was in fact exercised by phone and in writing; (3) whether the option was modified or extended; and (4) whether the Millses acknowledged the exercise of the option by waiving immediate payment of the purchase price.

## STANDARD OF REVIEW

Whenever we consider an appeal from a summary judgment, we review the trial court's legal conclusions, including its conclusion that the material facts are not disputed, for correctness. *See* Utah R.Civ.P. 56(c) (stating summary judgment is appropriate only if "there is no genuine issue as to any

material fact and ... the moving party is entitled to a judgment as a matter of law"). This standard allows us to make our own conclusions and does not obligate us to defer to the trial court. *See State v. Pena*, 869 P.2d 932, 936 (Utah 1994).

## ANALYSIS

### I. Exercise of the Option

I believe the trial court erroneously concluded that under Utah law, Brody was required to tender the full purchase price before or on the last day of the option period to *exercise* the option. In reaching this conclusion, the trial court relied on the Utah Supreme Court's reasoning in *Hofmann v. Sullivan*, 599 P.2d 505 (Utah 1979). *Hofmann*, however, is not a case about how to exercise an option contract; it is a case discussing the enforceability of such a contract. Contrary to the trial court's interpretation, *Hofmann* does not require tender of the purchase price to *exercise* the option. Instead, *Hofmann* held that an option contract that does not prescribe how and when payments will be made is "not ambiguous" and can be enforced by requiring payment "at the time of the *exercise* of the option." 599 P.2d at 508 (emphasis added). Because the instant case deals with whether or not the option was exercised, rather than the *Hofmann* situation of whether or not the option contract was enforceable, the trial court's reliance on *Hofmann* is misplaced.

In cases addressing whether or not an option was properly exercised, Utah courts have consistently held that an option to purchase must be strictly exercised according to its terms. *See J.R. Stone Co. v. Keate*, 576 P.2d 1285, 1288 (Utah 1978); *Nance v. Schoonover*, 521 P.2d 896, 897 (Utah 1974). If an option agreement is silent as to the method required to exercise the option, courts have generally held that any mode of acceptance will suffice so long as it manifests the optionee's unconditional decision to exercise. *See Karakehian v. Boyer*, 900 P.2d 1273, 1276 (Colo.Ct.App.1994), *aff'd*, 915 P.2d 1295 (Colo.1996); *see also Loose v. Brubacher*, 219 Kan. 727, 549 P.2d 991, 996 (1976) (stating " '[w]here the contract is silent on the subject of the manner in which an option

is to be exercised, no particular form or notice is essential' " (citation omitted)).

Moreover, payment or tender is not required to exercise an option unless expressly required by the terms of the agreement. *See Karakehian*, 900 P.2d at 1277–78 (stating when option requires tender, optionee must accept and tender; but when option contains no such language, tender is not condition precedent to exercise); *cf. J.R. Stone*, 576 P.2d at 1288 (requiring strict compliance with option terms); *Nance*, 521 P.2d at 897 (same). Here, the option did not specify any required form of exercise. There is no basis to assume that Brody was legally required to tender the purchase price to exercise the option. Rather, the uncontested facts establish Brody exercised the option to purchase before the expiration of the option period. Under the facts as we are required to review them, the telephone conversation of February 9, 1995, and the letter sent by Brody, dated February 10, 1995, stating "we will be exercising our option to purchase the condominium," are sufficient to exercise the option under its terms.

In addition, "[a]n acceptance requires manifestation of unconditional agreement to all of the terms of the offer ... [along with] *a definite intention to accept the offer* ... without material reservations or conditions." *R.J. Daum Constr. Co. v. Child*, 122 Utah 194, 200, 247 P.2d 817, 819 (1952) (emphasis added); *see also Upland Indus. Corp. v. Pacific Gamble Robinson Co.*, 684 P.2d 638, 640–41 (Utah 1984) (recognizing conditional acceptance as some statement that offeree is willing to enter into agreement different in some respect to proposed original offer, amounting to counteroffer). In this case, there is no discussion of accepting the offer in any way contrary to the terms of the option. The letter of acceptance alone, sent and received within the option period, was sufficient to exercise the option. *See Hofmann*, 599 P.2d 505, 507 (Utah 1979) (finding letter sent by offeree stating, "I hereby give you notice of [offeree's] intent to exercise this option and to purchase said real property at the price agreed upon," was reasonable and effective exercise); *Upland Indus. Corp.*, 684 P.2d at 641 (holding notice of intent to

exercise option which added additional "request" to deal was effective to timely exercise option to extend lease).

Therefore, Brody timely exercised the option. The alleged telephone acceptance, combined with the letter of confirmation, created a binding and enforceable contract for the sale and purchase of the condominium. *See Estate of Schmidt v. Downs,* 775 P.2d 427, 431 (Utah App.1989) ("[A]n option is a unilateral obligation binding only on the optionor. The option becomes binding on both parties, if the optionee accepts the offer within the specified time period." (citations omitted)).

## II. Time of Payment

Because Brody timely exercised the option, thereby creating a binding contract, we must determine whether Brody complied with the terms of the contract. Where the contract is silent as to when tender of the purchase price is required, "[c]ourts universally read into such contracts an obligation of payment within a time *'reasonable' in the context of the transaction and circumstances of the parties. What is reasonable is a question of fact."* *Hofmann,* 599 P.2d at 508 (emphasis added) (quoting *Ferris v. Jennings,* 595 P.2d 857, 860 (Utah 1979)).

In reviewing the evidence presented to the trial court, genuine issues of material fact exist. A dispute exists between the parties as to when payment was required, and whether or not that payment was excused for legally sufficient reasons. In addition, what constitutes a "reasonable time" for payment is a question of fact, which depends in significant measure on what facts are established regarding the telephone conversation of February 9, 1995. Brody claims the conversation included a discussion that payment would be made sometime following the Millses' return to Salt Lake City on or about March 15, 1995. The Millses contest this factual allegation, claiming the option contract required payment before or on February 14, 1995. The substance of the February 9 conversation is clearly material to what constitutes a reasonable time for tender, and whether Brody complied with the contract terms.

## CONCLUSION

I would reverse the trial court's order of summary judgment because the trial court erred in concluding that the option agreement, silent as to the method and time of tender, required payment of the purchase price to *exercise* the option. In addition, viewing the facts and inferences in the light most favorable to Brody, genuine issues of material fact regarding the February 9, 1995 telephone conversation, and regarding what constitutes a reasonable time for payment under the exercised option agreement, preclude an order of summary judgment.