WARDLEY CORPORATION BETTER HOMES AND GARDENS, Norma Zampedri, Homestead Realtors and Warren Burbank, Plaintiffs and Appellants,

v.

R. David BURGESS, Defendant and Appellee.

No. 900452–CA.

Court of Appeals of Utah.

April 17, 1991.

Philip C. Patterson (argued), Patterson and Patterson, Ogden, for plaintiffs and appellants.

Martin W. Custen and Jane Marquardt (argued), Marquardt, Hasenyager & Custen, Ogden, for defendant and appellee.

Before BENCH, JACKSON and RUSSON, JJ.

OPINION

BENCH, Judge:

Appellants appeal from a summary judgment entered in favor of Burgess. We affirm.

The facts in this case are straightforward. On July 26, 1988, Burbank, the listing agent from Homestead Realtors, obtained from Burgess a listing agreement to list Burgess's home for sale. The contract was for a six-month term. The listing agreement provided: "During the life of this contract, if you [Homestead] find a party who is ready, able and willing to buy, lease or exchange said property ... I agree to pay you a commission of 6% for the sale, lease or exchange."

At the end of the six-month period, Homestead had not yet located a buyer. Burbank asserts that on January 26, 1989, the last day of the contract term, he called Burgess and Burgess orally agreed to extend the listing agreement for three months. There was never any written agreement indicating that the original listing agreement had been extended. Burgess was aware that Homestead was still endeavoring to find a buyer following the termination of the original listing agreement. On several occasions Burgess was even present when the house was shown by Homestead.

Homestead eventually found a prospective buyer represented by Zampedri of Wardley Corporation Better Homes and Gardens. In March, Burbank presented an earnest money agreement to Burgess which Burgess signed.[1] Burbank relates in his affidavit that after the signing of the earnest money agreement the home was

---

1. Appellants concede that the earnest money agreement, although signed, was insufficient to constitute a "memorandum" of the purported agreement to extend the listing agreement. *See Machan Hampshire Properties, Inc. v. Western* *Real Estate and Dev. Co.,* 779 P.2d 230, 234–35 (Utah Ct.App.1989) (in order to satisfy the statute of frauds, a memorandum "must contain all the essential terms and provisions of the contract to which the parties have agreed").

appraised for approximately $10,000 less than the list price. Burbank indicated that Burgess was upset and unsure whether he would go through with the sale. A closing was nevertheless scheduled. At the closing, Burgess refused to sign the closing documents and the sale was never consummated.

Appellants claim that they are entitled to the commission because they produced a ready, able, and willing buyer. They acknowledge that the proposed buyer was not found until after the term of the listing agreement lapsed, but assert that they are nevertheless entitled to a commission because Burgess orally extended the listing agreement. Burgess, on the other hand, asserts that he did not extend the agreement. Appellants therefore claim that there was a genuine dispute as to whether the listing agreement was extended and that summary judgment should not have been granted.

"Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Transamerica Cash Reserve, Inc. v. Dixie Power and Water, Inc.*, 789 P.2d 24, 25 (Utah 1990). Because summary judgment does not resolve factual issues, a challenge to summary judgment only presents questions of law for our review. We review those conclusions for correctness, according no particular deference to the trial court. *Id.* In reviewing a grant of summary judgment,

> we consider the evidence in the light most favorable to the losing party, and affirm only where it appears there is no genuine dispute as to any material issues of fact, or where, even according to the facts as contended by the losing party, the moving party is entitled to judgment as a matter of law.

*Themy v. Seagull Enters., Inc.*, 595 P.2d 526, 528–29 (Utah 1979) (footnotes omitted).

Despite the apparent factual dispute as to whether Burgess did or did not orally agree to an extension of the listing agreement, summary judgment was appropriate because any extension to the listing agreement falls within the ambit of the statute of frauds.

> In the following case every agreement shall be void unless such agreement, or some note or memorandum thereof, is in writing subscribed by the party to be charged therewith:
>
> . . . .
>
> (5) Every agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation.

Utah Code Ann. § 25–5–4 (1988).

This court recently reaffirmed the broad impact of section 25–5–4 in *Machan Hampshire Properties, Inc. v. Western Real Estate and Development Co.*, 779 P.2d 230 (Utah Ct.App.1989). We recognized in *Machan* that section 25–5–4 is "intended to protect property owners from fraudulent and fictitious claims for commissions," *id.* at 234, by placing an unyielding duty upon real estate agents and brokers to obtain written listing agreements or face the risk of nonpayment.

> Although application of the statute may lead to harsh results where a real estate broker's labors go uncompensated, a broker must be presumed to know that an oral contract of employment for rendition of services in negotiating a sale of real estate for a commission is invalid. A broker who fails to secure written authorization assumes the risk of relying on oral promises and has no cause to complain if efforts go unrewarded.

*Id.* n. 8 (citations omitted).

Appellants argue that the oral extension of a listing agreement should be permissible under the statute. "The rule is well settled in Utah that if an original agreement is within the statute of frauds, a subsequent agreement which modifies the original written agreement must also satisfy the requirements of the statute of frauds to be enforceable." *Golden Key Realty, Inc. v. Mantas*, 699 P.2d 730, 732 (Utah 1985). *See also Coombs v. Ouzounian*, 24 Utah 2d 39, 41–42, 465 P.2d 356, 358 (1970) (extension of option must be in writing). Any attempt to modify the duration

of the original listing agreement was therefore required to be in writing.

Without any substantive legal analysis to support a departure from the well-settled Utah case law on this subject, appellants present two cases from other states in support of their position, *Bennett & Kahnweiler Assocs. v. Ratner*, 133 Ill.App.3d 316, 88 Ill.Dec. 530, 478 N.E.2d 1138 (1985), and *Wieneke Properties, Inc. v. Thiessen*, 94 Or.App. 306, 765 P.2d 815 (1988). We do not, however, find these cases persuasive in Utah where we are required to give effect to each and every word of a statute if possible. *See Madsen v. Borthick*, 769 P.2d 245, 252 n. 11 (Utah 1988). We are, however, persuaded by the analysis found in *Franke v. Blair Realty Co.*, 119 Ohio St. 338, 164 N.E. 353 (1928), the only other listing agreement extension case advanced by the parties.

> The contract attempted to be avoided by oral agreement was a definite contract signed by the defendant that he would pay a commission if the property was sold "before the expiration of this agreement." The oral agreement was a new contract affecting the time of performance, and, by substituting a new time of performance, varied an essential term of the written contract. To hold otherwise would be to nullify the provisions of the statute of frauds with respect to real estate commission contracts.

*Franke*, 164 N.E. at 355.

We therefore hold that even if the parties orally agreed to extend the duration of the listing agreement, as asserted by appellants, the agreement to extend was void under the statute of frauds. The trial court therefore did not err in awarding summary judgment to Burgess.

> While this may seem a harsh result, it does not require our apology. The very adoption of a statute of frauds reflects the Legislature's considered judgment that, with certain kinds of important arrangements, it is preferable to invalidate a few otherwise legitimate agreements because they were not written than to burden the system and the citizenry with

claims premised on bogus, unwritten agreements.

*Machan*, 779 P.2d at 237 (Orme, J., concurring).

We affirm. Costs on appeal are awarded to Burgess.

JACKSON and RUSSON, JJ., concur.