2007 UT App 361

**In re OLYMPUS CONSTRUCTION, LC**

**David C. Matthews, Appellant,**

v.

**Olympus Construction, LC, Appellee.**

**No. 20060739–CA.**

Court of Appeals of Utah.

Nov. 8, 2007.

---

Dwayne A. Vance, Park City, for Appellant.

Steven T. Waterman, Brent D. Wride, and Steven C. Strong, Salt Lake City, for Appellee.

Before Judges BILLINGS, McHUGH, and THORNE.

## OPINION

BILLINGS, Judge:

¶ 1 David C. Matthews appeals from the trial court's grant of Olympus Construction, LC's (Olympus) motion for summary judgment dismissing Matthews's claim for an unpaid real estate commission and the trial court's award of attorney fees to Olympus. We affirm and remand for the award of attorney fees that Olympus incurred on appeal.

## BACKGROUND

¶ 2 In June 1998, Matthews worked as a licensed real estate agent for Re/Max Brokers, LC (Re/Max). In August 1998, Olympus retained Matthews's real estate services to help it purchase property in Summit County, Utah. The parties entered into a real estate purchase contract that provided a $200 commission to Matthews. Matthews contends that an agent of Olympus orally promised to pay him an additional $100,000 commission when the property was sold.

¶ 3 In 1999, Matthews's wife, who had been an associate broker for Re/Max, became licensed as a principal broker. Matthews and his wife ended their business relationship with Re/Max and began their own brokerage firm called Re/Max Town and Country.

¶ 4 In January 2002, Olympus filed a Petition for Judicial Dissolution. The trial court appointed a receiver in 2002, and a successor receiver (Receiver) in 2003.[1] Pursuant to a motion filed by the Receiver, the court entered an order (the Bar Date Order) establishing June 30, 2004 as "the bar date for all claims to be filed against [Olympus's] receivership estate."

¶ 5 On June 30, 2004, the bar date, Matthews filed a Notice of Claim against Olympus for the $100,000 commission. In this notice, Matthew identified himself as the

---

1. Only the actions of the successor receiver are at issue in this case. We refer to her as the Receiver, and make no further mention of the initial receiver.

"Creditor," which the claim form defined as the "person or other entity to whom Olympus owes money or property." On October 6, 2004, the Receiver sent a letter to Matthews's counsel requesting that Matthews withdraw his claim and indicating that if he did not, the Receiver intended to "proceed with litigation." In November 2004, the Receiver requested that the trial court set a new date as the deadline for rejecting claims. Matthews opposed this motion, asserting that his claim was considered approved under Utah Code section 48–2c–1305(4) because Olympus had not rejected the claim within ninety days as required by that section. *See* Utah Code Ann. § 48–2c–1305(4) (2002). In March 2005, the trial court granted Olympus's request for a new rejection date and denied Matthews's motion asking the court to require the Receiver to pay his claim. The Receiver rejected Matthews's claim in April 2005 and warned Matthews that she would pursue a judgment for attorney fees if Matthews continued to pursue his claim.

¶ 6 The trial court granted Olympus's motion for summary judgment on the basis that Matthews's claim was barred by both the statute of frauds, *see id.* § 25–5–4(1)(e) (Supp.2007), and Utah's real estate statutes concerning the collection of broker's fees, *see id.* §§ 61–2–10, 18 (2006). The trial court also awarded Olympus $25,112.50 in attorney fees after concluding that Matthews had acted in bad faith and that his claim was without merit. This amount included compensation for seventeen hours the Receiver spent in her capacity as an attorney. Matthews appeals both the trial court's entry of summary judgment and its award of attorney fees to Olympus.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 Matthews first contends the trial court erred in granting summary judgment to Olympus based on the statute of frauds and Utah's broker licensing statutes. Summary judgment is permissible when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). In determining whether the trial court's grant of summary judgment was appropriate, "we

review the trial court's legal conclusions for correctness, affording those legal conclusions no deference," and "view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Ault v. Holden*, 2002 UT 33, ¶ 15, 44 P.3d 781 (internal quotation marks omitted).

¶ 8 Matthews next argues that the trial court incorrectly extended the date by which the Receiver was required to reject claims. Matthews contends that the Receiver was bound by Utah Code section 48–2c–1305(4), which mandates that claims must be rejected within ninety days or they will be "considered approved." Utah Code Ann. § 48–2c–1305(4). We review the trial court's interpretation of the statute for correctness without deference to the trial court. *See Jeffs v. Stubbs*, 970 P.2d 1234, 1240 (Utah 1998).

¶ 9 Additionally, Matthews argues that the trial court incorrectly awarded attorney fees to Olympus after finding that Matthews's claim was without merit and was pursued in bad faith. The court's determination that Matthews's claim was without merit is a question of law that we review for correctness. *See Jeschke v. Willis*, 811 P.2d 202, 203 (Utah Ct.App.1991). The trial court's determination that Matthews's claim was filed in bad faith is a question of fact that we review under a "clearly erroneous" standard. *See id.*

¶ 10 Finally, we review the trial court's award of attorney fees for time the Receiver spent in her capacity as an attorney. The "trial court has 'broad discretion in determining what constitutes a reasonable fee, and we will consider that determination against an abuse-of-discretion standard.'" *Valcarce v. Fitzgerald*, 961 P.2d 305, 315 (Utah 1998) (quoting *Dixie State Bank v. Bracken*, 764 P.2d 985, 991 (Utah 1988)).

## ANALYSIS

### I. Statute of Frauds

¶ 11 Matthews contends that the trial court erred in granting summary judgment to Olympus on the basis of the statute of frauds. Under our statute of frauds,

"[E]very agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation" is void "unless the agreement, or some note or memorandum of the agreement, is in writing, signed by the party to be charged with the agreement." Utah Code Ann. § 25-5-4(1)(e) (Supp.2007). Matthews is correct that the original agreement, which contained the $200 commission, satisfies the statute of frauds. However, "if an original agreement is within the statute of frauds, a subsequent agreement which modifies the original written agreement must also satisfy the requirements of the statute of frauds to be enforceable." *Golden Key Realty, Inc. v. Mantas*, 699 P.2d 730, 732 (Utah 1985). Matthews admits that the $100,000 commission was promised to him orally and that no written documentation of it exists. Accordingly, the alleged modification for $100,000 is unenforceable under the statute of frauds.

¶ 12 Matthews attempts to circumvent this rule by pointing to a narrow exception to the statute of frauds. In *Bentley v. Potter*, 694 P.2d 617 (Utah 1984), the Utah Supreme Court held that "the statute of frauds is a defense that can be waived by … admitting its existence in the pleadings, or admitting at trial the existence and all essential terms of the contract." *Id.* at 621 (citations omitted). Matthews argues that this exception applies because a representative of Olympus promised him a $100,000 commission and Matthews himself filed an affidavit saying so. However, the *Potter* exception exists only to ensure that "the one opposing the claim cannot complain if he admits the existence of the guarantee." *Id.* It does not apply when the party making the claim simply asserts the admission in either the pleadings or at trial.

2. Because Matthews's claim is barred by the statute of frauds, we need not consider the alternative basis of the trial court's ruling that Matthews's claim was barred because it violated Utah's broker licensing statutes. Nevertheless, this alternative ground further demonstrates the lack of merit of Matthews's claim. In Utah, only licensed brokers are eligible to bring claims for unpaid commissions. *See* Utah Code Ann. § 61-2-18 (2006). Matthews does not suggest that he was ever a licensed broker. Instead he argues

¶ 13 Matthews goes on to insist that a factual dispute exists—whether an oral promise to pay was made—and asks us to reverse the trial court's summary judgment ruling. This we decline to do. The essential factual issue here is not in question: there is no written agreement concerning the $100,000 commission. We addressed this issue in *Wardley Corp. Better Homes & Gardens v. Burgess*, 810 P.2d 476 (Utah Ct. App.1991), where we upheld the trial court's ruling of summary judgment despite the outstanding factual question of whether the parties orally agreed to a modification of a written real estate agreement. *See id.* at 477. In *Burgess*, we held that whether there had been an oral agreement was irrelevant, because such oral agreement would nevertheless be void under the statute of frauds. *See id.* We explained that

[t]he very adoption of a statute of frauds reflects the [l]egislature's considered judgment that, with certain kinds of important arrangements, it is preferable to invalidate a few otherwise legitimate agreements because they were not written than to burden the system and the citizenry with claims premised on bogus, unwritten agreements.

*Id.* at 478. Furthermore, requiring such agreements and modifications to be in writing is consistent with our position that "a broker [or agent] must be presumed to know that an oral contract of employment for rendition of services in negotiating a sale of real estate for a commission is invalid." *Machan Hampshire Props., Inc. v. Western Real Estate & Dev. Co.*, 779 P.2d 230, 234 n. 8 (Utah Ct.App.1989).

¶ 14 In sum, any modification to the original contract needed to be in writing. Because it was not, the modification is void under the statute of frauds. We therefore affirm the trial court's ruling on this matter.[2]

that, because a Re/Max broker assigned the claim to Matthews's wife, who then assigned the claim to him, he stands in the shoes of the broker and can therefore sue in his own name. However, our case law has been insistent that *only licensed brokers* may sue to collect commissions. *See Morris v. John Price Assocs., Inc.*, 590 P.2d 315, 316 (Utah 1979) (holding that a real estate agent was barred from collecting a promised commission from the defendant because of the language

## II. Section 48–2c–1305 of the Utah Revised Limited Liability Company Act

¶ 15 Matthews next contends that the Receiver was bound by the provisions of section 48–2c–1305 of the Utah Revised Limited Liability Company Act, which offers guidelines to dissolved companies that are in the process of winding up. *See* Utah Code Ann. § 48–2c–1305 (2002). Specifically, Matthews argues that the Receiver was bound by the deadline in subsection 4: "Claims which are not rejected by the dissolved company in writing within 90 days after receipt of the claim by the dissolved company shall be considered approved." *Id.* § 48–2c–1305(4). There is no dispute that Olympus did not reject Matthews's claim within ninety days. Thus, Matthews argues, the claim was "considered approved," which he asserts meant it had to be paid without any further inquiry.

¶ 16 We first consider whether the court was precluded from extending the period for the rejection of claims. Judicial dissolutions are enabled by Part 12 of the Utah Revised Limited Liability Company Act, *see id.* §§ 48–2c–1201 to –1214 (2002 & Supp.2007). The judge overseeing the dissolution may: "(a) issue an injunction; (b) appoint a receiver ... with all powers and duties the court directs; (c) take other action required to preserve the company's assets wherever located; and (d) carry on the business of the company until a full hearing can be held." *Id.* § 48–2c–1211(3) (Supp.2007). Further, "[t]he court ... has exclusive jurisdiction over the company and all of its property." *Id.* § 48–2c–1212(1) (2002). Finally, "[t]he court shall describe the powers and duties of the receiver ... in its appointing order, which may be amended from time to time." *Id.* § 48–2c–1212(3).

¶ 17 In this case, the court's appointing order named the Receiver and indicated the scope of the court's continuing power over the Receiver's duties:

[The Receiver] shall wind up the business and affairs of Olympus as provided in Part 13 of the Utah Limited Liability Company Act ... [and] shall exercise all the powers of a receiver of a limited liability company provided for by law or equity, *except as her powers may be specifically circumscribed or expanded by the terms of this Order or any subsequent order of the Court.*

. . . .

Except as otherwise provided herein the Receiver may dispose of known and unknown claims against Olympus by notice and/or publication, may set dates for the barring of such claims and may accept or reject claims all as provided in Utah Code ... [s]ections 48–2c–1305 and 1306. To the extent permitted by law, all claims filed against Olympus shall be adjudicated and determined by this Court in and as part of this proceeding.

. . . .

*Nothing in this Order shall prevent the Receiver from requesting augmentation, modification, or supplementation of her powers as Receiver to the full extent permitted by law or equity upon further application to the [c]ourt and after notice and a hearing.*

(Emphasis added.) The court entered the Bar Date Order but did not address how claims filed were to be resolved. The Bar Date Order does not include any provision for the automatic allowance of claims. Rather, it states "the filing of a claim by a creditor against Olympus does not necessarily mean that it will be allowed. The Receiver ... reserves the right to file an objection to all or a portion of any filed claim."

¶ 18 We conclude that because the statutory language governing receiverships grants great latitude to the trial court and because the trial court's orders explicitly state the trial court may expand and modify the powers of the Receiver, the court could extend the period for rejecting claims. Moreover,

of Utah Code section 61–2–18). *See also Young v. Buchanan,* 123 Utah 369, 259 P.2d 876, 878 (Utah 1953) (holding that Utah Code sections 82–2–18 and 82–2–10 (now numbered 61–2–18 and 61–2–10) unite to ensure that "any action to

recover a fee or commission must be instituted and brought by the broker under whom the salesman is employed"). Accordingly, this argument also fails.

section 48–2c–1305 itself is permissive: "A dissolved company in winding up *may* dispose of the known claims against it by following the procedures described in this section." *Id.* § 48–2c–1305(1) (emphasis added). Further, the trial court's order makes it clear that the Receiver had the right to reject any claim as she did. We conclude that the court had the power to extend the time for rejecting claims and that Matthews's claims were properly rejected.[3]

### III. Attorney Fees

#### A. Claims without merit and brought in bad faith

■■ ¶ 19 The trial court awarded attorney fees to Olympus based on rule 56(g) of the Utah Rules of Civil Procedure, *see* Utah R. Civ. P. 56(g), and Utah Code section 78–27–56, *see* Utah Code Ann. § 78–27–56 (2002), concluding that Matthews's claim was brought in bad faith and was without merit.

■ ¶ 20 Rule 56 authorizes a court to award attorney fees if affidavits presented on summary judgment are brought in bad faith:

If any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party presenting them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused, including reasonable attorney[ ] fees.

Utah R. Civ. P. 56(g). We review findings of bad faith for abuse of discretion. *See Jeschke v. Willis*, 811 P.2d 202, 204 (Utah Ct.App. 1991).

■ ¶ 21 The trial court concluded that Matthews's legal arguments were "without merit" because he "knew (or [was] charged with knowing) that his claim was barred by the statute of frauds and the Utah broker commission statutes." Utah Code section 78–27–56 provides that "the court shall award attorney[ ] fees to a prevailing party if the court determines that the action is without merit and not brought or asserted in good faith." Utah Code Ann. § 78–27–56. A claim is without merit if it is "frivolous," is

"of little weight or importance having no basis in law or fact," or if it "clearly [lacks a] legal basis for recovery." *Cady v. Johnson*, 671 P.2d 149, 151 (Utah 1983). We review the trial court's conclusions that an argument is "without merit" for correctness, as this is a question of law. *Jeschke*, 811 P.2d at 203.

¶ 22 The trial court based its findings of bad faith on a series of sworn statements by Matthews, including affidavits, answers to interrogatories, and various motions that contained inconsistent information. Owing to these inconsistencies, the trial court concluded that at least some of the documents were offered in bad faith:

Whether false statements were made in Matthews's sworn statements and admissions that the alleged $100,000 commission was promised to him and owed to him in his own right for his own efforts, or in Matthews's later sworn statements that the alleged $100,000 commission was promised and owed to Re/Max Town & Country with his wife as principal broker, or in Matthews's last representations in the last-minute "Supplemental Memorandum" that the alleged $100,000 commission was promised and owed to Fred B. Law and then indirectly assigned to him, it is clear that Matthews made materially false and patently inconsistent statements in this proceeding, and that Matthews knew (or is charged with knowing) that those statements were false when he made them.

Matthews's assertions are not caused by a faulty memory because they are key, essential, and material facts including that Matthews was never a licensed principal broker.

Matthews's own discovery responses along with the second affidavit of his wife, Jane Matthews, conclusively establish that Matthews knew his own affidavit on file with this [c]ourt contained false statements, yet neither Matthews nor his counsel withdrew or amended it.

Matthews knew (or is charged with knowing) that his claim was barred by the

---

**3.** We need not reach the issue of the consequences of a receiver not timely rejecting a

claim, as we hold Matthews's claim was properly rejected.

statute of frauds and the Utah broker commission statutes.

. . . .

Utah case law supports a conclusion in this case that the Matthews's [c]laim was not asserted or pursued in good faith, because Matthews's presumed knowledge of Utah law respecting commission agreements and commission collections, and his materially false sworn statements, are "certainly sufficient to raise the inference of bad faith," and because Matthews has pursued his claim for "no other apparent reason" than to "drive up the costs of litigation" in trying to recover a claim he knew he was not entitled to pursue.

(Citations omitted.)

¶ 23 We agree with the trial court that Matthews knew or should have known that his claim was barred by the statute of frauds and Utah's broker commission statutes. Further, given the trial court's repeated statements about the breadth of its supervision over the Receiver, and the permissive applicability of section 1305 of the Limited Liability Act, we conclude his claim for automatic payment of a meritless claim was also without merit.

**B. Attorney fees for Receiver's time**

¶ 24 Finally, Matthews challenges the trial court's award of attorney fees to Olympus for seventeen hours the Receiver spent in her capacity as an attorney. Matthews contends that attorney fees cannot be paid to the Receiver because she spent that time as a pro se litigant, not as an attorney for Olympus. We disagree.

¶ 25 It is true that we do not award attorney fees to lawyers who are representing themselves. See *Jones, Waldo, Holbrook & McDonough v. Dawson*, 923 P.2d 1366, 1374 (Utah 1996). However, the fact that the Receiver is standing in for Olympus does not make her a litigant on her own behalf. As a receiver, she is a court-appointed representative, not a litigant. The trial court did not abuse its discretion in awarding attorney fees for the small amount of time the Receiver spent in her capacity as an attorney.

¶ 26 Matthews also contends that any fees attributable to the administrative complaint Olympus pursued as well as any fees attributable to excess and unnecessary time Olympus spent on this matter are not recoverable. However, the trial court did not abuse its discretion in finding that the work counsel performed was necessary and that the amount of time spent was appropriate. The attorney fees awarded in connection with that finding are therefore affirmed.

### CONCLUSION

¶ 27 We affirm. We conclude that the trial court correctly granted summary judgment where the alleged oral modification of the brokerage contract was void under the statute of frauds. We also agree with the trial court that it retained sufficient power over the case to grant an extension of time for rejection of claims as the Receiver requested. Moreover, we affirm the trial court's award of attorney fees on the basis that Matthews's claims were without merit and the suit was brought in bad faith. We also affirm the award of attorney fees for the Receiver's work. We further award attorney fees to Olympus on appeal and remand for the calculation of such reasonable attorney fees.

¶ 28 WE CONCUR: CAROLYN B. McHUGH and WILLIAM A. THORNE Jr., Judges.